56 N.J. Super. 46 (1959)
151 A.2d 435
IN THE MATTER OF THE ADOPTION OF L.
Superior Court of New Jersey, Essex County Court, Probate Division.
Decided May 14, 1959.
*47 Mr. Edward Terner, for the plaintiff.
Mr. Eugene T. Urbaniak, Deputy Attorney General, for the State (Mr. David D. Furman, Attorney General).
CONKLIN, J.C.C.
L was adopted by Mr. and Mrs. C on a complaint filed March 17, 1952, which adoption was granted May 2, 1952. The minor lived with her adopting parents until about 1958, when she left her foster home and went to live with her mother in New York. A supplemental complaint was filed on February 5, 1959, by the foster parents, alleging that it is for the best interest of the adopted child that the judgment of adoption be abrogated and that the custody of the child be restored to the *48 natural mother. The complaint had appended the consent of not only the natural mother and the foster parents, but the child as well.
The matter was set down for hearing, at which time the court took testimony from the foster parents as well as the child. The substance of the testimony reveals that the adopted child prefers to be remanded to the control and custody of her natural mother rather than reside in the home of the foster parents. The desire of the child to live with her natural mother emanates from an aspiration to avoid the more severe parental control which is exercised by the foster parents. The natural mother allows a greater latitude of social and recreational activity, unhampered by the discipline which the foster parents exercise. In passing, the court takes particular note of the fact that the natural mother refused to take the stand at the hearing of this matter but was content to make representations through her attorney. The court cannot help but be influenced by the failure of the natural mother to openly testify in court as to why she desires the return of her child to her custody and control. Various inferences can be drawn from her failure to testify, not the least damaging of which is that she would be unable to deny upon cross-examination from the State that the parental control which she exercises upon L is lax and not of the degree to which a growing adolescent must be subjected if she is to steer a straight course through the temptations and foibles of life.
Although the natural mother could perhaps bring to the court's attention strong and convincing data that this child would be given the proper background under the care and guidance of her natural mother, the fact that the natural mother has failed to take the stand to support her wish for the remanding of custody and control of her child, along with the fact that the child was born out of wedlock and the mother was a former inmate of Clinton Reformatory, raises grave doubts in the mind of the court as to the fitness of this woman to properly rear L.
*49 The State has raised a delicate problem by questioning the inherent power of this court to abrogate this adoption which has heretofore been consummated. Research reveals that the problem is indeed a delicate one, New Jersey cases failing to reflect a single case where an adoption has been abrogated. In addition, the adoption statute, N.J.S.A. 9:3-17 et seq., fails to provide any statutory remedy for the application which is now before the court. There are several sections of the adoption act, along with its construction, which would appear to be apposite to the question presented to the court. N.J.S.A. 9:3-17 provides the court with a large amount of discretion in administering the act "so as to promote policies and procedures which are socially necessary and desirable for the protection of such children, their natural parents and their adopting parents." Cases arising under the adoption act time and again reiterate that the care and custody of all children in the final analysis rests with the parens patriae of the State, and that under this doctrine the courts may make such disposition as will in the final analysis promote the best interests of the child.
While some courts have expressed doubt as to the inherent power to set aside an order of adoption, it is well recognized that such a decree may be vacated when its entry was brought about by fraud or misrepresentation. Such is the inherent power of the court to control its own judgments when fraud has been practiced upon that court. The case at bar, however, is not an example of such a state of facts, for there is no contention by any party that any fraud has been practiced upon either the court or by any parties to the adoption of L.
The present application can best be characterized as a plea to set aside an adoption on equitable grounds. The moving parties assert that this court has jurisdiction to annul, vacate, or set aside an order of adoption under the proper circumstances. If this court does possess the power to annul or vacate its prior order of adoption, the only *50 question that would remain is whether the grounds asserted by the parties are sufficient to justify such an action. As stated above, although no New Jersey cases have dealt with this problem, other states confronted with similar factual circumstances have gone both ways on the question of whether such power resides in the probate court in the absence of statutory authority to abrogate an adoption. See 11 A.L.R. 819; 16 A.L.R. 1021; 2 A.L.R.2d 889; 23 A.L.R.2d 706; 1 Am. Jur. 671.
All courts adhere to the view that the paramount consideration is the welfare of the child. If the annulment clearly appears to be in the best interest of the child, this would constitute proper grounds for annulment at the instance of either the natural or foster parents, providing that there are no public policy considerations which override the consent of all to the abrogation of the adoption. Naturally, courts will not allow an abrogation of an adoption if it is premised on the desire of the foster parents to rid themselves of a "bad bargain" or a change in heart on the part of the natural parents. The courts have uniformly agreed that a mere change in attitude or regret does not of and in itself constitute proper grounds for annulment.
In the case sub judice the court does not feel that it must meet the legal contention of the State that under New Jersey law abrogation of adoption is non-existent, for the court is of the opinion that taking into consideration all of the factual circumstances which gave rise to the application for an abrogation of the adoption, even if this court did possess power to abrogate the adoption, the present case is not one in which such a power would be exercised. The court feels that the best interests of the child and the community would be served by her remaining under the custody and control of the foster parents. Although, from the child's point of view, life would seem to be more worth living if she were allowed to remain with her natural mother, an adult appraisal of the situation leads one to the conclusion that the strictures of the foster parents were not unreasonable, *51 but indeed, desirable for the proper fruition of a healthy adult life. It is not beyond comprehension why the child should rebel against such discipline and desires to take the course of least resistance of living with her mother who would allow an almost complete and unfettered way of life.
The court therefore holds that conceding for the moment that it possesses the power to abrogate the adoption, the best interests of this child and of society would not be served by such an action.
Let an appropriate order be submitted.