**STATE of Missouri ex rel. William R. DORSEY, Relator,**

v.

**Honorable John J. KELLY, Jr., Judge of the Circuit Court of St. Louis County, Missouri, Respondent.**

No. 47392.

Supreme Court of Missouri,

En Banc.

Sept. 14, 1959.

 

William R. Dorsey, Clayton, relator and attorney for relator.

Harold S. Cook, Fred A. Eppenberger, St. Louis, for respondent, Cook, Murphy, Lance & English, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, of counsel.

James R. O'Connor, Fred B. Whalen, St. Louis, for petitioners Joseph F. Schiller and Veronica F. Schiller.

George E. Heneghan, St. Louis, amicus curiae, Heneghan, Roberts & Cole, St. Louis, of counsel for Catholic Charities of St. Louis; Fred Eppenberger, St. Louis, of counsel for Family and Children's Service of Greater St. Louis; James R. Blumenfeld, St. Louis, of counsel for Jewish Child Welfare Assn.

HOLLINGSWORTH, Chief Justice.

This is an original proceeding in which relator, William R. Dorsey, guardian ad litem of a female child, seeks to prohibit respondent, Honorable John J. Kelly, Jr., Judge of Division Seven of the Circuit Court of St. Louis County, sitting as Judge of the Juvenile Division of said Court, from further hearing of a petition filed in said court by a husband and wife (to whom we will hereinafter refer as "petitioners") for adoption of said child as their own, under the provisions of Chapter 453, RSMo 1949, V.A.M.S., to which revision all statutory references herein are made unless otherwise indicated.

The ground upon which relator relies is his contention that the child has not been in the lawful and actual custody of petitioners for a period of at least nine months, which, under the provisions of section 453.-080, is a jurisdictional prerequisite to the entry of a decree of adoption.

Upon issuance of our provisional writ, respondent moved to quash, averring that the application filed by relator, considered in the light of an agreed statement of facts made a part thereof, shows that said child has been in the lawful and actual custody of petitioners for at least nine months and that respondent does have jurisdiction to hear and decree the adoption sought.

The issue thus presented has been well briefed by relator, by counsel for the petitioning husband and wife, by counsel for respondent, and by counsel for Catholic Charities of St. Louis, which was granted leave to file brief amicus curiae, in which latter brief counsel for Family and Children's Service of Greater St. Louis and counsel for Jewish Child Welfare Association have joined.

Relator does not challenge the fitness of petitioners as adoptive parents and it is apparent from the briefs that the primary purpose of this proceeding is to obtain a final determination as to whether the procedure which respondent intends to follow in the instant adoption proceeding, unless prohibited, is in compliance with the Adoption Code. Concededly, the procedure of which relator here complains has been followed by many of the juvenile divisions of the circuit courts of this state. However, a statement made in the course of an opinion rendered by the St. Louis Court of Appeals in 1955, to which we will advert, has produced some question as to its validity.

The facts are: On or prior to the 8th day of October, 1957, the child here sought to be adopted, by order entered of record, was made a ward of the Juvenile Division of the Circuit Court of the City of St. Louis. On that date, by order entered of record, the legal custody of the child was

transferred to Catholic Charities of St. Louis, hereinafter referred to as "Charities". That order recited that Charities was a pro forma decree corporation, "among whose purposes are the care and placement for care of minor children, including the placement of minor children for adoption"; and, after recital of other pertinent facts, concluded: "Wherefore, it is ordered, adjudged and decreed by the Court that the custody of [name here omitted], a minor child, be and the same is hereby transferred from said [the mother of said child] to said Catholic Charities of St. Louis and that said [mother] be and she is hereby granted permission to waive the necessity of her consent to a future adoption of said minor child and, further, the Court hereby approves the Waiver of such necessity executed by said [mother], dated Oct. 8th, 1957."

On the 9th of October, 1957, in accordance with long established custom when made legal custodian of juveniles by the juvenile courts within the area of St. Louis, Charities placed the child in the home of petitioners under a written agreement signed by the latter, which, insofar as material, reads:

"In as much as we, the undersigned, have made application to the Catholic Charities of Saint Louis for a child to be placed in our home pending legal adoption and on this date a child is being placed with us on that basis, we agree to and accept the following conditions:

"1. The child is to be taken on a probationary basis for at least one year.

"2. The custody and legal control of the child is to remain with the Catholic Charities of Saint Louis, until we adopt the child legally with the consent of the Catholic Charities of Saint Louis.

"3. We will notify the Department of Children of the Catholic Charities of Saint Louis of any illness of the child. We will give the agent of the Department of Children free access to our home, and the child placed in our care.

"4. We will give the child every opportunity to adjust himself to our home, but if the child should prove unsatisfactory, we will keep the child until the Catholic Charities, Department of Children, can make other arrangements for his care.

"5. It is understood that the final decision regarding the legal adoption will be made on the basis of the merits of the individual situation, taking into consideration the interest of the child and the prospective adoptive parents. If the welfare of the child, in the opinion of the Department of Children, demands the child's removal at any time previous to the legal adoption, the right of the Catholic Charities of Saint Louis to remove the child is conceded."

The child has resided and continues to reside in the home of petitioners in accordance with the terms of the agreement.

On November 19, 1958, petitioners, acting under the venue provisions of section 453.010, filed in the Juvenile Division of the Circuit Court of St. Louis County their petition for adoption of the child. Relator, being thereupon appointed by the court as her guardian ad litem, filed motion to dismiss or, in the alternative, to stay the proceedings on grounds that the child had not been in the *lawful and actual custody of petitioners* for a period of at least nine months, required by section 453.080 as a prerequisite to the entry of the adoption decree. Following hearing of said motion, the following order was entered:

"Upon the Agreed Statement of Facts submitted to the Court, being taken as true, the Court overrules guardian ad litem's Motion to Dismiss or in the Alternative to Stay Proceedings on the Adoption of the Within Minor on the grounds that the Court finds that the petitioners have had the lawful and actual custody of the

minor child required in Section 453.-080 R.S.Mo. 1949, V.A.M.S."

On December 8, 1958, at the hearing of petition, respondent indicated his intention to grant the adoption, but granted relator leave to seek prohibition.

Relator admits that the child was in the *actual* custody of petitioners for more than one year immediately prior to that date, but contends that inasmuch as the court has made no formal order or consent to her being placed in the custody of petitioners by Charities in accordance with its agreement with them, their custody, by virtue of the provisions of section 453.110, was not *lawful.*

Section 453.080, insofar as pertinent, reads as follows:

"If the court, after due hearing, is satisfied that the allegations of the petition are true, that the person sought to be adopted, if a minor, has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree, and that it is fit and proper that such adoption should be made, a decree shall be entered setting forth the facts and ordering that from the date of the decree the person sought to be adopted shall, to all legal intents and purposes, be the child of the petitioner or petitioners, * * *."

Section 453.110, *insofar as pertinent,* reads as follows:

"1. No person, agency, organization or institution shall surrender custody of a minor child, or transfer the custody of such a child to another, and no person, agency, organization or institution shall take possession or charge of a minor child so transferred, without first having filed a petition before the circuit court sitting as a juvenile court of the county where the child may be, praying that such surrender or transfer may be made, and

having obtained such an order from such court approving or ordering transfer of custody.

"2. This section shall not be construed to prohibit the placing of a child in a family home for care by any parent, agency, or organization or institution, if the right to supervise the care of the child and to resume custody thereof is retained. * * *

"3. Any person violating the terms of this section shall be guilty of a misdemeanor."

It is seen that Par. 1 of section 453.110, *in general terms,* makes it a misdemeanor (1) for any person or agency to *surrender* or *transfer custody* of a minor child to another person or (2) for any person or agency to take *possession* or *charge* of such child without first having obtained an order from the juvenile court approving or ordering transfer of custody. But Par. 2 of said section, *in specific terms,* excludes from Par. 1 *the placing of a child in a family home for care by any parent, agency, or organization or institution, if the right to supervise the care of the child and to resume custody thereof is retained.* That is precisely what Charities, the legal custodian of the child, did. We think it clear that Par. 2 of section 453.110, by expressly excepting from the general provisions of Par. 1 thereof the right of the legal custodian of a child to place it in a family home for parental care, retaining to the legal custodian the right to supervise such care and *"to resume custody"* of it, leads to the inescapable conclusion that the transfer of *actual custody* of the child, conditioned as stated, was "lawful"; and that the child "has been in the lawful and (admittedly) actual custody of * * * petitioners for a period of at least nine months * * *." No more is required under the provisions of section 453.080. In fact, the requirement that the placement agency retain the right to *resume custody* carries with it the definite connotation that placement of the child in a home for parental

care constitutes a lawful transfer of custody to the extent and for the purpose specifically authorized under Par. 2.

Relator, however, insists that the case of Child Savings Institute v. Knobel, 327 Mo. 609, 37 S.W.2d 920, 76 A.L.R. 1068, decided by this court en banc in 1931, holds to the contrary. In that case, a Nebraska institution for the care of children accepted from the natural parents the surrender of two children, a brother and sister, under a Nebraska statute which authorized such surrender, and then without further court order or authority of any kind, placed the children with Mr. and Mrs. Knobel, residents of Nodaway County, Missouri, under a signed application by which the Knobels agreed to take the children for a trial period and if they proved satisfactory to adopt them. Such agreement further provided that the Institute should have the right to ask for the return of the children, and in the event of such a request, the Knobels agreed to return them. Subsequently, the Knobels, being dissatisfied with the boy, returned him but refused to return his sister as requested, and the Institute brought habeas corpus in the Kansas City Court of Appeals, which transferred the case to this court. In considering the nature and legality of the custody of said children by the Knobels, the court, 37 S.W. 2d loc. cit. 924, said: "We start out with the proposition that the Child Saving Institute had the legal custody of these children at the time respondents took them from the institute. Has anything happened since that time to deprive the institute of its right to their legal custody? Respondents' custody of the children during the trial period, under an agreement to adopt them if they proved satisfactory and to return them to the institute in event they proved to be unsatisfactory or in event the institute demanded their return, did not give respondents the legal right to the *permanent* custody of the children or either of them. *Respondents' rights under the agreement with the institute was to either legally adopt the children or return them to the*

*institute.* Respondents allege in their return to the writ that they in good faith adopted the girl and made her one of their heirs." (Emphasis supplied.) The court then went on to hold that because of lack of notice to the Institute the attempted adoption by petitioners was void. But it does in effect hold, as we understand the opinion, that, although, under the agreement between the Institute and the Knobels, the Institute had not surrendered "legal" custody of the children sought to be adopted to the extent that the Knobels had any "legal right to the permanent custody of the children", yet the placement of the children with the Knobels, under the aforesaid agreement, vested them with such custody as would authorize entry of a decree of adoption upon compliance with other procedural requirements of the Adoption Code. That case does not support the contention made by relator.

Relator also cites section 453.070 in support of his contention that petitioners did not have *lawful* custody of said child. Section 453.070 provides *that no decree of adoption of a minor child shall be entered nor shall transfer of custody of such child* to petitioners be ordered until a full investigation has been made for the purpose of ascertaining whether the child is suitable for adoption and the suitability of the petitioners as parents for the child and the results thereof have been submitted in writing to the court. We are of the opinion, however, that when section 453.070 is read *in pari materia* with section 453.080 (requiring lawful and actual custody of the child as a prerequisite to entry of a decree of adoption) and Par. 2 of section 453.110 (making lawful a conditional transfer of custody to the extent shown in the instant case) it is clear that its provisions are directed solely against any decree of adoption or any transfer of *legal* custody such as would bring about any permanent change in the legal status or rights of the child or would vest any person with any *legal* right of its custody beyond that expressly authorized under Par. 1 of section

453.110 or would divest the parent or other *legal* custodian of any duty imposed by law to support or care for the child, until the investigation thereon required has been made, reported to and approved by the court. The brief of amicus curiae states (relator does not challenge the statement) that such investigation and written report thereof were made by Charities. The declared intention of the court in the instant case to decree the adoption sought shows beyond question that it deemed the investigation made by Charities and its report to the court warranted the entry of such decree.

This brings us to the case of In re Davis' Adoption, Mo.App., 285 S.W.2d 35, decided by the St. Louis Court of Appeals in 1955. In that case, the facts were that a child born out of wedlock in the State of Oregon was left when three weeks old with petitioners (husband and wife), who resided in Missouri and who were the parents of the natural father of the child. After having the child in their actual custody for the required period, they filed an adoption petition to which both natural parents consented. The Judge of the Juvenile Division of the Circuit Court of the City of St. Louis refused the adoption on the ground that petitioners did not have lawful custody and dismissed the petition. Petitioners appealed. The court held, 285 S.W.2d loc. cit. 37: "Lawful custody under the statute could only be custody obtained by compliance with the law. Consequently no decree should be granted unless it appears that at least nine months prior to the decree *a court of competent jurisdiction has awarded custody of the child to the petitioners* and that they have had actual custody for at least nine months immediately preceding the decree. In re Adams, Mo. App., 248 S.W.2d 63." (Emphasis supplied.)

We find no fault with the first sentence of the above quoted portion of that opinion. But we cannot agree with the emphasized portion of the last sentence and certainly it is not supported by In re Adams, Mo.

App., 248 S.W.2d 63. Actually, in closing the opinion in the Adams case, the court stated, 248 S.W.2d loc. cit. 66: "We need not explore the effect of the failure of Anna Brown to procure a formal order of court transferring the custody of Karen Ann under RSMo 1939 § 9616 or RSMo 1949 § 453.110, V.A.M.S."

The fundamental error in the above quoted and emphasized portion of the opinion in the Davis case is that section 453.080 does not require that an *order* of transfer of custody to petitioners for adoption be made as a prerequisite to lawful adoption. All that section 453.080 requires is that "if the court, *after due hearing, is satisfied* * * * that the person sought to be adopted, if a minor, *has been in the lawful and actual custody of the* * * * *petitioners* for a period of at least nine months", etc.

We are convinced and hold that by virtue of the provisions of Par. 2 of section 453.110, such an order is not a prerequisite to lawful custody within the intent and purview of section 453.080, where the child is by its legal custodian placed in a family home for parental care, if the right to supervise its care and resume its custody is retained. In other words, the custodial question presented to the court in decreeing adoption of a minor under the provisions of section 453.080 is not whether there has been an order of a court of competent jurisdiction awarding custody of the child to petitioners during the minimum nine months' period, but rather is it whether custody of the child has been lawful and actual in the petitioners during that period. See In re Adoption of Siler, 240 Mo.App. 1097, 225 S.W.2d 379, 381; State ex rel. Grimstead v. Mueller, Judge, (this court en banc) 233 S.W.2d 700, 701; In re Wines' Adoption, 241 Mo.App. 628, 239 S.W.2d 101.

In the instant case, legal custody of the child, by express order of the court, was placed in Charities. That order, on its face, reflects beyond question that the

court intended that Charities seek to procure suitable adoptive parents for the child. It follows that, when Charities, pursuant to the authority vested in it by the court, placed the child in the home of petitioners under and in strict accord with the express provisions of section 453.110, for the purpose of ascertaining whether, after the necessary trial period of actual custody for at least nine months, the welfare of the child would be promoted by its adoption by them, petitioners' custody of the child was "lawful" for the purpose for which such custody was placed in them.

The provisional rule in prohibition is discharged.

All concur.