In re Lucjan Houston NOVAK.

Johan NOVAK and Janina Novak, Appellants,

v.

Jacquelyn B. NOVAK, Respondent.

No. 59141.

Supreme Court of Missouri, En Banc.

May 5, 1976.

David L. Campbell, St. Louis, for appellants.

Allan F. Stewart, Legal Aid Society of City and County of St. Louis, Clayton, for respondent.

FINCH, Judge.

This is an appeal from an order entered October 15, 1973, by the Circuit Court of St. Louis County setting aside an earlier adoption decree whereby Lucjan Houston Novak was adopted by appellants, Johan and Janina Novak, his paternal grandparents. The appeal went to the Missouri Court of Appeals, St. Louis District, which reversed the action of the trial court in setting aside the decree of adoption. On application we ordered the case transferred here, and we now decide it as though on direct appeal. We affirm.

On January 25, 1971, Johan and Janina Novak filed their petition for "Transfer of Custody and Adoption" of Lucjan, the three year old son of Joseph and Jacquelyn Novak, son and daughter-in-law of the petitioners. The petition alleged that the petitioners desired to adopt the child, that they had the ability to care for, maintain and educate him, and that it was in his best interests. It requested the court to transfer the custody of Lucjan to them for the purpose of adoption nine months later. On the same date, a consent of parents to adoption, executed by Joseph and Jacquelyn Novak, was filed.

A guardian ad litem was appointed, and on June 10, 1971, a hearing was held on the request for transfer of custody. The grandparents, the child, his guardian ad litem, and Jacquelyn Novak, the mother, were present. Evidence offered included testimony that the grandparents at that time had actual custody of the boy. At the conclusion of the hearing, custody of Lucjan was ordered transferred to the grandparents.

Subsequently, on March 17, 1972, a hearing on the petition to adopt was held. Present were the grandparents, the boy and his guardian ad litem. The grandparents both testified of their continuing desire to adopt and their ability to care for the boy and that they had been in touch with their son and daughter-in-law about the adoption. They stated that there had been no change in circumstances. A decree of adoption then was entered which made various findings of fact, including a finding that the boy "has been in the lawful and actual custody of the petitioners for a period of at least nine months prior to the entry of the decree".

Some seven months later, on October 11, 1972, the natural mother, Jacquelyn Novak, filed in the circuit court her motion to set aside the decree of adoption entered in March. She alleged, among other things, that she and her husband had been involved in marital difficulties and it had been felt that it would be in the best interests of their marriage and of the child if he was placed temporarily in the custody of the grandparents. She alleged that "representation was made to her that in order for the Novaks to properly care for the child, it was necessary for her to sign a consent to adoption", that she was informed that "this consent * * * was not to be actually used in the adoption matter but was to help reunite herself and her husband" and that she was "coerced" by the Novaks to such an extent that she did not fight the transfer of custody. She further alleged that she had had the actual custody of the child all of his life. This included the years 1971 and 1972, except for certain short periods of time when he was with the paternal grandparents.

A hearing on the motion to set aside the decree of adoption was held on April 10, 1973, before Judge Hoester, the same trial

judge who had entered the decree of adoption. Mrs. Jacquelyn Novak testified in support of her motion that there had been trouble between her and her husband and that the adoption was proposed by the paternal grandparents as a way to reunite her and her husband. She also testified in support of her allegations that she had been misled and coerced by the grandparents in connection with the consent to adoption she signed and with respect to consummation of the adoption proceedings but we need not and do not consider the sufficiency thereof as we decide the case on other grounds.

The mother testified that the boy had been in her actual custody during most of the period of time between the order transferring custody and the decree of adoption and had not been in the actual custody of his paternal grandparents except for brief periods. She stated that the boy was with the grandparents for a four week period during the spring of 1971, for about five days in August 1971, when she and her husband, Joseph, went to Minneapolis to look for housing, and for a few days in March 1972, at the time her husband took him to St. Louis. This was at the time when the adoption hearing was held. In addition, the boy, along with his parents and a half sister (a daughter of Jacquelyn Novak by a previous marriage), spent about three weeks visiting the elder Novaks during the 1971 Christmas season. During all of the rest of the time, Lucjan either was with his mother and father, Jacquelyn and Joseph Novak, or with his mother during the various periods when Jacquelyn and Joseph were separated. Up until the end of August 1971, they were living in St. Louis County (they had their own place and lived in a different locality than the grandparents) and after the latter part of August 1971, they lived in Minnesota. As a matter of fact, although Joseph, the father, took Lucjan to St. Louis in March 1972, at the time the adoption hearing was held, he was returned to the actual custody of Jacquelyn after the adoption decree on March 17, 1972, and remained with her in Minneapolis until he was taken from her without her consent on October 7, 1972, by Joseph and two men who had accompanied him to the place where Jacquelyn and the boy were then living.

On October 15, 1973, Judge Hoester entered an order setting aside the decree of adoption on the basis that it was null and void. The order also directed that the boy be returned to the court for a further hearing on the question of custody.

This case has been reviewed pursuant to Rule 73.01 as construed in *Murphy v. Carron*, Mo., 536 S.W.2d 30, decided concurrently herewith.

■ Adoption was unknown at common law and exists only by virtue of statutory authorization. *Lamb v. Feehan*, Mo., 276 S.W. 71 (1925). Adoptions are now governed by Chapter 453[1] of our statutes which establishes procedures and requirements.

Sec. 453.080 is the section with which we are concerned in this case. It provides as follows:

"If the court, after due hearing, *is satisfied that the allegations of the petition are true,* that the person sought to be adopted if a minor, *has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree,* and that it is fit and proper that such adoption should be made, *a decree shall be entered* setting forth the facts and *ordering that* from the date of the decree *the person sought to be adopted shall,* to all legal intents and purposes, *be the child of the petitioner or petitioners,* and the court may decree that the name of the person sought to be adopted be changed, according to the prayer of the petition." (Emphasis supplied.)

As noted, it provides that a decree of adoption may be entered only if the court is satisfied after hearing that the minor whose adoption is sought has been in the "lawful and actual custody" of the prospective adoptive parents "for a period of at

---

1. Statutory references are to RSMo 1969 unless indicated otherwise.

least nine months prior to the entry of the adoption decree." In this case we have uncontradicted, undisputed evidence that Lucjan Novak, the boy who was to be adopted, had not been in the actual custody of the adopting parents for at least nine months prior to the adoption decree. He had been in their custody only about one month during that period. During the rest of the time he was with both of his natural parents or with his mother, much of the time in another state. Consequently, it becomes important to determine the effect of non-compliance by the prospective adopting parents with the statutory prerequisite of nine months *lawful and actual* custody prior to entry of an adoption decree.

In the case of *In re Adams,* 248 S.W.2d 63 (Mo.App.1952), the court discussed this requirement and its purpose, saying at 66:

"One of the salutary objects of the General Assembly in lately introducing this new requirement into the adoption laws was to provide a sufficiently long period prior to the adoption hearing to allow the foster parents and the child sought to be adopted to become thoroughly adjusted to each other in the prospective home and to provide time for investigation so that the court at the hearing may be fully informed as to the advisability of making the temporary placement permanent. The time period specified refers to the period immediately preceding the hearing." [2]

Subsequent cases hold that compliance with this statutory requirement of nine months custody which is both lawful and actual is jurisdictional. In *State ex rel. Dorsey v. Kelly,* 327 S.W.2d 160, 161 (Mo. banc 1959), this court so recognized when it said:

" * * * contention that the child has not been in the lawful and actual custody of petitioners for a period of at least nine months which, under the provision of section 453.080, is a jurisdictional prerequisite to the entry of a decree of adoption."

In *State ex rel. M. L. H. v. Carroll,* 343 S.W.2d 622, 626, 627 (Mo.App.1961), the court quoted §§ 453.070 and 453.080 and then stated:

"Under these two sections of the adoption statute it is readily seen that the matter of the lawful and actual custody of a child is an inherent part of any adoption proceeding. *In re Mayernik,* [Mo., 292 S.W.2d 562] supra; and *In re Davis' Adoption,* Mo.App., 285 S.W.2d 35.

"Before the Juvenile Court can award a decree of adoption the petitioners must have had lawful and actual custody of the child for a period of at least nine months prior to the entry of the adoption decree. From this requirement of the statute it is obvious that petitioners seeking to adopt a child, if they have not had the requisite custody for the period required, must take steps to obtain the custody of the child. This is the first step necessary for the procurement of a decree of adoption. *In re Adoption of McKinzie,* [Mo.App., 275 S.W.2d 365] supra.

"The first duty of the court in any adoption proceeding before a decree may be entered is to be satisfied that the person sought to be adopted has been in the lawful and actual custody of petitioners for a period of at least nine months prior to the entry of the adoption decree. Section 453.080, supra.

"The Legislature having imposed this duty on the court before it could enter a decree of adoption, gave to the Juvenile Court the authority to make an order transferring the custody of a child. * * * *"

In *Hartwig v. Hartwig,* 333 S.W.2d 101, 102 (Mo.App.1960), a child's grandparents sought to adopt an infant whose father was her sole surviving parent. The court recognized that the grandparents did not meet the nine months actual custody requirement of § 453.080. It also recognized that the father had not consented to the adoption and had not willfully neglected the child so as to eliminate the necessity for his consent. The court, in recognizing that the statutory requirements had not been met, held that

2. See also Coor, Eppenberger, The New Adoption Act, 4 J. Mo. Bar 228 (1948).

"[T]he Court had no power to adjudge adoption in this case."

*In re Adoption of P. J. K.,* 359 S.W.2d 360, 367 (Mo.App.1962), the appellate court recognized that there had been compliance with the statutory requirements so that the court had jurisdiction to decree adoption, saying:

"[W]here a petitioning stepfather had married the natural mother of a child and thereafter had shared custody of the child in the same home with the mother continuously for more than nine months, the stepfather's custody was 'lawful and actual' during that period and the court had jurisdiction to entertain the stepfather's petition for adoption and to proceed to a decree * * *."

Finally, *In re Neusche,* 398 S.W.2d 453, 457 (Mo.App.1965), the court said:

"The trial judge does not have a discretion to decree a transfer of custody of an adoption until the statutory requirements are met, but after the statutory requirements are met, he may exercise his discretion as to whether or not to allow the transfer of custody or the adoption, taking into consideration, the moral, intellectual, material, spiritual, cultural and social welfare of the child and upon that basis he may grant or refuse the decree of transfer of custody or of adoption."

█ It is clear that the adopting parties, the grandparents, did not have actual custody of Lucjan during the nine months preceding the entry of the decree of adoption. It likewise is clear that the courts of this state have construed the provisions of § 453.080 as conditioning the right of a court to decree adoption upon compliance with the requirement of nine months legal and actual custody preceding adoption.

The question we must resolve is whether on such showing the circuit court had the right to set aside the adoption decree which it had entered previously.

In the case of *In re McDuffee,* 352 S.W.2d 23 (Mo. banc 1961), this court considered an appeal in a proceeding by the adopting parents to annul a prior decree of adoption whereby they had adopted a minor child. In that case they sought such annulment on the basis that the child was suffering from mental disturbance and that it would be in the best interest of the child to annul the adoption and place her in the custody of an institution equipped to handle her mental instability with its attendant behavior pattern. The action of the trial court in denying annulment was affirmed but in the course of the opinion, the court discussed the power of the court to annul a prior adoption decree.

The respondent in *McDuffee* had argued that once the court decreed adoption and the judgment became final after the expiration of thirty days, the trial court was without jurisdiction to set it aside on any ground other than those specified in § 453.-130.[3] This court held otherwise, saying at 26, 27:

"* * * But we entertain no doubt that the broad equitable powers vested in our courts of general jurisdiction (and which are also vested with jurisdiction of the laws of this state relating to adoption) empower them to vacate a decree of adoption upon any of the classical grounds that entitle such courts to vacate any other decree, such as judgments procured by fraud or to prevent injustice where such final judgments were the result of unavoidable accident or excusable mistake. *Johnson v. Stull,* Mo., 303

---

3. The text of § 453.130 is as follows:

"Whenever a person adopted under the provisions of this chapter shall develop venereal infection as a result of conditions existing prior to the time such person was adopted, or shall develop feeblemindedness or epilepsy, or shall prove to be a member of a race, the members of which are prohibited by the laws of this state from marriage with members of the race to which the parents by adoption belong, a petition setting forth such facts may be filed at any time within five years after such adoption with the court which decreed the adoption, and if on a hearing the facts in such petition are established, the said court may enter a decree annulling the adoption and setting aside any and all rights and obligations that may have accrued by reason of said adoption. (R.S.1939, § 9615, A.L. 1947 V. II p. 213)"

S.W.2d 110, 115; *Contrare v. Cirese*, Mo., 336 S.W.2d 485, 489; and *Nealon v. Farris*, Mo.App., 131 S.W.2d 858, which considered the question of annulment of a prior valid decree of adoption.

\* \* \* \* \* \*

"The sole ground upon which adoption may be *decreed* in this state is that prescribed by § 453.030, which provides: 'In all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand.' The question is, therefore, does the circuit court, inherently possessed of broad equitable powers and further vested by statute with jurisdiction to decree or withhold adoption solely upon the basis of the welfare of the person sought to be adopted, have jurisdiction, in the proper case, to annul thenceforward a priorly rendered valid decree of adoption upon finding that the welfare of the child now demands that the adoption thenceforth stand vacated?

"Research of the cases and comment found in the following authoritative references has convinced us that upon clear showing that the higher welfare of the child demands such action courts of equity may so annul a valid decree of adoption: Annotation, 2 A.L.R.2d pp. 888–912; 2 C.J.S. Adoption of Children § 45, pp. 433–437; 1 Am.Jur., Adoption of Children, § 72, p. 671."

The foregoing is consistent with the rule stated in 2 C.J.S. Adoption of Persons § 117 (1972):

"An adoption decree may be revoked or set aside where it was procured by *fraud or misrepresentation, which relates to jurisdictional matters,* rather than fraud which is merely available as a defense. Accordingly, the court is justified in setting aside an adoption decree for the concealment of material facts, or the fraudulent gaining of the consent of the natural parent to the adoption."

See also: *Nealon v. Farris*, 131 S.W.2d 858 (Mo.App.1939); *In re Adoption of L.,* 56 N.J.Super. 46, 151 A.2d 435, 437 (N.J.Prob. 1959); *In re Doe's Adoption*, 197 A.2d 469 (Del.Orph.1964), affm'd, 210 A.2d 863 (Del. 1964); 2 Am.Jur.2d Adoption, § 76 (1962).

In this case an affirmative showing that the grandparents then had actual custody of Lucjan was made at the June 10, 1971, hearing on transfer of custody and the order then entered transferring custody specifically stated that "[T]he minor person for whom transfer of custody is sought \* \* has been in the actual custody of the petitioners since March 11, 1971". When the adoption hearing was held on March 17, 1972, both of the grandparents were witnesses. Neither testified specifically that Lucjan had been in their actual custody since the order transferring custody or had been in their actual custody for nine months preceding the date on which the adoption hearing was held. However, reference was made to the order made approximately nine months before whereby custody was transferred to them preparatory to adoption. They said they had been in touch with their son and daughter-in-law about the adoption being granted and there had been no change in circumstances or conditions. They did not say that the boy had been with his parents and that they had arranged for him to come down from Minneapolis for the hearing. The boy was there with the grandparents but the father and mother were not present. The testimony necessarily impliedly stated to the court that the boy was and had been in their custody since he had been awarded to them. That the judge so understood is shown by the finding of fact in the decree which stated as follows:

"3. The person sought to be adopted was born on 10/10/67, is a minor and has been in the lawful and actual custody of the petitioners for a period of at least 9 months prior to the entry of this decree."

Not only did the petitioners not inform the court at the hearing that the boy had been with his father and mother and later with his mother, much of the time in Minneapolis, but they did not inform the court of that fact after the judge in his decree

erroneously recited that they had had actual custody for at least nine months before the date the decree was entered. Furthermore, they permitted the boy to return to his mother in Minneapolis after the hearing and made no move to acquire actual custody until sometime later, more than thirty days after entry of the adoption decree, with the result that the absence of the requisite nine months actual custody was not called to the attention of the court until the mother filed her motion to set aside the adoption.

The proceeding instituted by Jacquelyn Novak asking that it be set aside was filed some seven months after the adoption decree and, hence, came within the limitations of § 453.140, which provides as follows:

"After the expiration of one year from the date of entry of the decree of adoption, the validity thereof shall not be subject to attack in any proceedings collateral or direct, by reason of any irregularity in proceedings had pursuant to this chapter."

We conclude that by their testimony the grandparents misled the trial judge with reference to who had had actual custody of the boy during the period of time between the order of June 10, 1971, transferring custody to them and March 17, 1972, when the adoption hearing was held. By what they did say, including their appearance with the boy but without his parents, they conveyed the impression that the boy had been in their possession. That had been true, they had testified, on June 10, 1971, and circumstances in the case had not changed. Obviously, the court concluded, after the hearing, that the boy had been in their actual custody during the intervening period, because in his order of adoption, he specifically so found. Nothing was done by or on behalf of the grandparents, after the order was entered, to correct the obvious misunderstanding by the judge with reference to this question. He had been misled by what occurred at the hearing and his misconception was not corrected.

It matters not what descriptive term is used to characterize what occurred. Some cases speak of fraud, some of misrepresentation, some of imposition. However labeled, what occurred provided ample basis for Judge Hoester to set aside the decree of adoption he had entered when he had been led to believe that the statutory prerequisite of nine months actual custody by the grandparents had been met. *In re McDuffee, supra; Nealon v. Farris, supra.*

Judgment affirmed.

All concur.