**Nancy Ann Marshall Rodgers WEBB (now Allman), Plaintiff-Appellant,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY OF JOPLIN, Administrator of the Estate of Edward Holt Marshall, Deceased, First National Bank and Trust Company of Joplin, Executor of the Estate of Dorothy Board, Deceased, Dorothy Scott, Howard A. Rodgers and Mildred S. Rodgers, Defendants-Respondents.**

No. 10722.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 1980.

Motion for Rehearing or Transfer
Denied July 14, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Max H. Glover, Webb City, for plaintiff-appellant.

John R. Martin, Joplin, for defendants-respondents.

HOGAN, Judge.

Plaintiff brought this declaratory judgment action in the Circuit Court of Jasper County praying adjudication that a decree of adoption entered by the juvenile division of that court is void for want of jurisdiction. The trial court found the decree valid. Plaintiff appeals.

Edward Holt Marshall, plaintiff's father, and defendant Mildred Rodgers (then Mildred Marshall) were divorced after the plaintiff was born on April 23, 1947. It is inferable from the record that defendant Mildred Rodgers was awarded custody of the plaintiff. Mildred then married defendant Howard Rodgers. Following their marriage, Mr. and Mrs. Rodgers filed a petition to adopt the plaintiff and on November 21, 1950, when the plaintiff was 3½ years of age, the Juvenile Division of the Circuit Court of Jasper County entered a decree declaring plaintiff to be, "to all legal intents and purposes," the child of defendants Howard and Mildred Rodgers.

Mr. Marshall died intestate on August 2, 1975. On October 31, 1975, plaintiff's attorney was granted permission to inspect the record made in the adoption case. On February 24, 1976, plaintiff brought this action to set aside the decree and to have herself declared her natural father's sole heir. Plaintiff alleged and it is conceded that if the decree is not void, Mr. Marshall's only heirs were Dorothy Board, his aunt, and Dorothy Scott, his second cousin. Plaintiff joined both the aunt and the cousin as parties; defendant Board died while the action was pending and the defendant bank was substituted as her executor. Plaintiff's adoptive parents were joined as defendants. They filed answers but neither was called as a witness.

The plaintiff introduced the record from the adoption case together with a stipulation of fact, both of which will be discussed in the course of the opinion. Among other things, the defendant offered parts of a pretrial deposition given by the plaintiff. Plaintiff testified that she had lived with her adoptive father until she was 19 years of age; that her relationship with her adoptive father was one of mutual love and

respect, and that the only reason she was attacking the validity of the decree of adoption was that Mr. Marshall had only one child, she was that child, and she believed she was entitled to inherit his estate. Such, capsulized, is the background of the appeal.

It is elementary that this court must inquire of its jurisdiction sua sponte, particularly when its jurisdiction is doubtful. *St. Louis County Transit Co. v. Division of Employment Security*, 456 S.W.2d 334, 335[1] (Mo.1970); *Smith v. Santarelli*, 355 Mo. 1047, 1047–1048, 199 S.W.2d 411, 412[1] (1947). In this case, our examination of our jurisdiction requires us to look to the jurisdiction of the trial court, for in this state, appellate courts acquire no jurisdiction on appeal from a void order except jurisdiction to determine the invalidity of the order or judgment appealed from and to dismiss the appeal. *Kansas City Sanitary Co. v. Laclede County*, 307 Mo. 10, 14–15, 269 S.W. 395, 397[2] [3] (banc 1925); *In re Moore's Estate*, 354 Mo. 240, 249, 189 S.W.2d 229, 234–235[6] (1945); *Ross v. Conco Quarry, Inc.*, 543 S.W.2d 568, 571[2] (Mo. App.1976). Jurisdiction over all matters pertaining to probate business, including jurisdiction to determine heirship was confided to the probate court by §§ 472.020 and 473.617, RSMo 1969, which were in effect when this case was tried. *Younghaus v. Lakey*, 559 S.W.2d 30, 31–32 (Mo.App.1977). In the *Younghaus* case, the plaintiff sought a declaratory judgment determining heirship after the probate court had made that determination, and it was held that the "first filed" principle applicable to courts of concurrent jurisdiction barred the plaintiff's action. *Younghaus v. Lakey*, supra, 559 S.W.2d at 31–32.

In this case, the estate of Edward Holt Marshall was being administered when the action for a declaratory judgment was filed. Jurisdiction of the probate court had already attached, as far as the determination of heirship was concerned. Nevertheless, the record reflects that the Probate Court of Jasper County was given notice of the filing of the declaratory judgment proceed-

ing by mail on March 24, 1976. There is nothing in the record which indicates that the probate court had exercised its jurisdiction when this action was commenced; likewise there is no positive indication that the probate court is holding the matter in abeyance. Direct inquiry of the probate court indicates that administration of the estate has progressed, but final determination of heirship and final settlement of Mr. Marshall's estate is being continued pending resolution of this appeal.

We conclude, with considerable reserve, that the Circuit Court of Jasper County acquired jurisdiction of this cause. Sections 472.020 and 472.030, RSMo 1969, conferred full "equitable powers" upon the probate court to effectuate its own jurisdiction, *In re Myers' Estate*, 376 S.W.2d 219, 224 (Mo.banc 1964), but as the court there noted, the phrase "probate matters" is not susceptible of concise definition. We do not suppose that §§ 472.020 and 472.030 were meant to convert the probate court into a court of general jurisdiction. Adoption, like illegitimacy, is a *status*, determination of which affects a good many relationships other than the right of the adoptive child to inherit from his or her natural father, R. Leflar, American Conflicts Law, §§ 239, 241 (3rd ed. 1977), and the circuit court had jurisdiction to determine plaintiff's status in this action. *Menees v. Cowgill*, 359 Mo. 697, 701, 223 S.W.2d 412, 413[1] (1949); *Keiser v. Wiedmer*, 263 S.W.2d 63 (Mo.App. 1953). In an analogous situation involving an illegitimate child's right to inherit, our colleagues at St. Louis concluded the plaintiff was entitled to have her status determined in a declaratory judgment action, but the determination of heirship per se must be left to the probate court, even though the findings in the circuit court would be res judicata in the probate court. *N.R. v. R.J.D.*, 588 S.W.2d 76 (Mo.App.1979). We agree, and adhere to that ruling in this case.

On the merits, counsel has briefed five overlapping and intermingled assignments of error. The defendant bank has answered these points as presented. In the view

we take of this appeal, discussion of every point is unnecessary. However, because the appeal involves a number of juridically imprecise notions, e. g., "jurisdiction," "collateral attack," and "a judgment void on its face," several preliminary observations are appropriate.

■ It is important to determine whether this attack upon the decree of adoption is a "direct" or a "collateral" attack. Many years ago, our Supreme Court distinguished a "direct" attack from a "collateral" attack upon a judgment in *Howey v. Howey*, 240 S.W. 450 (Mo.banc 1922), as follows, 240 S.W. at 456:

"'The term "collateral" as used in this connection is opposed to "direct." If an action or proceeding is brought for the very purpose of impeaching or overturning the judgment, it is a direct attack upon it. . . . On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral.'"

This method of distinguishing a "collateral" from a "direct" attack upon a judgment was utilized by this court in *Inter-River Drainage Dist. of Missouri v. Henson*, 99 S.W.2d 865, 872[2] (Mo.App.1936), and when it is applied here, it is at once apparent that this attack upon the decree of adoption is a collateral attack. Of course, the plaintiff sought to have the decree vacated, but certainly that was not a matter of primary importance to her. The plaintiff had left her adoptive parents' home in 1967; she did not expect to live with them, but neither did she expect to alter the cordial and affectionate relationship she had enjoyed with her adoptive father. The "independent purpose" of the action, the "other relief or result" sought, was to become Mr. Marshall's sole heir. Plaintiff herself so testified. The validity of a judgment, when collaterally attacked, must be tried by an inspection of the record alone, and no other or further evidence on the subject is admissible, even though such evidence might be sufficient to impeach the judgment in a direct proceeding against it. *Smith v. Benson*, 542 S.W.2d 571, 576[6] (Mo.App.1976); 1 Freeman, Judgments, § 375, pp. 785–786 (5th ed. 1925); 46 Am.Jur.2d, Judgments § 663, p. 819 (1969). Moreover, our courts have held that this principle applies to courts of limited jurisdiction or courts of general jurisdiction exercising special powers conferred by statute. *Bingham v. Kollman*, 256 Mo. 573, 589–590, 165 S.W. 1097, 1100[4] (1914); *Inter-River Drainage Dist. of Missouri v. Henson*, supra, 99 S.W.2d at 873[8]. It therefore follows that the decree is not void unless the jurisdictional defect appears from the record made in the adoption case.

One further preliminary observation is appropriate. In speaking of "jurisdiction," courts quite generally speak of "jurisdiction of the person" and "jurisdiction of the subject matter," but plaintiff's brief makes it quite clear that she argues lack of the so-called "third essential," that is, jurisdiction to enter the particular judgment in the particular case. The principle invoked was articulated by our Supreme Court, in *State ex rel. Lambert v. Flynn*, 348 Mo. 525, 532, 154 S.W.2d 52, 57 (banc 1941), as follows:

"But the third essential, jurisdiction to render the particular judgment in the particular case (sometimes called 'competency'), partakes of the character of one or the other of the first two [essentials of jurisdiction]. Where the lacking element of jurisdiction goes to the personal privilege of the litigant, it may be waived. But when it depends on the *power* of the court under a public policy established by statute or otherwise, it cannot be waived. . . ."

The focus of the appeal is upon the requirements of § 453.080, RSMo 1949, in effect when the decree of adoption was entered. The statute read: (our emphasis)

"If the court, after due hearing, is satisfied that the allegations of the petition are true, that the person sought to be adopted, if a minor, *has been in the lawful and actual custody* of the petitioner or petitioners *for a period of at least nine*

*months prior to the entry of the adoption decree,* and that it is fit and proper that such adoption should be made, a decree shall be entered setting forth the facts and ordering that from the date of the decree the person sought to be adopted shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and the court may decree that the name of the person sought to be adopted be changed, according to the prayer of the petition."

■ The plaintiff's principal argument, stated and restated, is that the juvenile division of the circuit court had no power to enter a decree until defendant Howard Rodgers had had her in lawful and actual custody for at least 9 months. In support of this proposition, plaintiff cites *In re Novak*, 536 S.W.2d 33, 35–37[1] (Mo.banc 1976), and a good many other precedents. We concede that 9 months' actual and lawful custody of the adoptee is a jurisdictional prerequisite to the entry of a decree of adoption. *State ex rel. Dorsey v. Kelly*, 327 S.W.2d 160, 161 (Mo.banc 1959). Nevertheless in light of the principles we have developed, the question before this court is whether the jurisdictional defect appears from the record in the adoption proceeding. And, we note that unlike *In re Novak*, supra, 536 S.W.2d 33, this is a collateral rather than a direct attack upon the judgment.

As indicated, the plaintiff introduced the record made in the adoption case. The record was duly identified by the clerk in whose custody it had been kept. The docket sheet and the face of the petition show that on October 17, 1950, defendants Howard and Mildred Rodgers filed a petition for adoption in the Juvenile Division of the Circuit Court of Jasper County. Given favorable intendment, the petition pleads as inducement that petitioners (defendants Rodgers) seek to adopt the plaintiff, an infant born in Jasper County on April 23, 1947; that Edward Holt Marshall is the natural father of the child and defendant Mildred Rodgers is the natural mother of the child. Further, it is averred that plaintiff's natural father has willfully abandoned the plaintiff, 3½ years of age, for one year next before the filing of the petition, and has willfully neglected to provide proper care and maintenance for the plaintiff for one year last preceding the filing of the petition. Petitioners further alleged that they resided in Joplin, in Jasper County, had and maintained a home and were able and willing to properly care for, maintain and educate the plaintiff in their home as their own child to all legal intents and purposes. Prayer is for a decree of adoption and for an order changing plaintiff's name to Nancy Ann Rodgers. The petition was verified. It was sufficient to invoke the jurisdiction of the court. Section 453.020, RSMo 1949.

The docket sheet reflects that a writ of summons issued on the day the petition was filed; the return to the writ certifies personal service on Mr. Marshall on October 17, 1950, by delivery of a copy of the writ and the petition.

The record further shows that on October 17, 1950, defendants Rodgers filed an "application for child." Manifestly, the document was executed to secure the investigation required by § 453.070, RSMo 1949. A good deal of personal information about the petitioners (defendants Rodgers) is set out. Among other things, the application states that the child is 3½ years of age, that the husband is 39 years of age and the wife is 27 years of age. Most informative is line 6 of the written application, which we set out as it appears of record:

"Maiden name of wife *Masters, Sue* Years married *2½.*"

The application is signed "Mrs. Howard Rodgers" and "Howard A. Rodgers." The last two lines of the document are reserved for "Remarks by Probation Officer." These lines are inscribed: "Mother & Stepfather are petitioners & deemed proper persons to adopt. s/Kelley."

The decree, entered November 21, 1950, recites the appointment of William Kelley as guardian ad litem for plaintiff on November 17. The record shows that Mr. Kelley consented to act as such and filed an

answer. The decree further sets out that on November 21, 1950, defendants Rodgers, as petitioners, appeared in person and plaintiff appeared by her guardian ad litem. The court further found that Edward Holt Marshall and Mildred Rodgers were plaintiff's natural parents, that Mr. Marshall had been duly served with process, and that he was in default for failure to appear. The decree further recites that the matter was taken up by consent, and evidence was heard. Finding that the petitioners were of good character and able to properly care for, maintain and educate the plaintiff, the court decreed adoption and a change of name. There is no recitation nor specific finding that plaintiff had been in her adoptive father's actual and lawful custody for at least 9 months.

Also to be noted is that when the trial of this case began, a stipulation was offered. The stipulation recites, among other things, that: 1) plaintiff was born Nancy Ann Marshall on April 23, 1947; 2) that plaintiff's natural parents were Edward Holt Marshall and Mildred Rodgers; 3) that Mildred Rodgers and Mr. Marshall were divorced in September 1947, and Mrs. Rodgers was awarded custody of the plaintiff; 4) that Howard and Mildred Marshall were married on May 22, 1950, and 5) that the decree of adoption was entered November 21, 1950. Counsel for the defendant bank, stating that defendant would "stipulate to what the facts would be, *if admissible*," (our emphasis), objected to the admission of parts 2, 3 and 4 of the stipulation on the ground that those parts of the stipulation should not be received to impeach the decree. The objection was overruled and the stipulation was received in evidence.[1]

To return to the dispositive question in the case, it is apparent that the plaintiff assumed the decree could be impeached by extrinsic evidence. That assumption was rejected in *Smith v. Benson*, supra, 542 S.W.2d at 576, and we reject it here. Moreover, we consider the defendant mistaken in her view that the jurisdictional defect appears on the record, or, as counsel puts it, the judgment is void "as a matter of law." The case is governed by the law in effect at the time the decree was entered. *Robertson v. Cornett*, 359 Mo. 1156, 1163, 225 S.W.2d 780, 782[2] (1949); *Smith v. Benson*, supra, 542 S.W.2d at 573. When this decree was entered in 1950, the adoption statutes had been changed recently and extensively. Laws of Mo.1947 (Second Session) at 216, § 9612a, effective May 21, 1948, and later codified as § 453.070, RSMo 1949, provided, in material part: (our emphasis)

"No decree for the adoption of a minor child shall be entered *nor shall transfer of custody of such a child to the petitioner or petitioners . . . be ordered by the Juvenile Court . . . until a full investigation has been made . . . of the suitability of the petitioner or petitioners as parents for the child*. Such investigation shall be made, as directed by the Court having jurisdiction, . . . [by] a juvenile court officer, or other suitable person appointed by the Court. *The results of such investigation shall be embodied in a written report that shall be submitted to the Court*."

Although it later became clear that the custodial question presented to the court in decreeing adoption is not whether there has been an order transferring custody to the petitioners, but whether their custody of the child has been actual and lawful for a period of 9 months preceding entry of the decree, *State ex rel. Dorsey v. Kelly*, supra, 327 S.W.2d at 165[2], earlier precedents suggested that an order transferring custody of the adoptee to the petitioner or petitioners was a jurisdictional prerequisite in every case.[2] More importantly, the express lan-

---

1. This case is therefore not comparable to those cited in *Edwards v. Hrebec*, 414 S.W.2d 361, 364, n. 4 (Mo.App.1967), wherein the parties admitted or neglected to object to extrinsic evidence showing a lack of jurisdiction on collateral attack; defendant duly objected to such evidence dehors the record, and the trial court's findings indicate it did not consider the extrinsic evidence, even though it admitted the stipulation.

2. See Speca, Some Custody Problems Under Missouri's Adoption Law, 32 U.M.K.C.L.Rev. 214, 216–220 (1964).

guage of § 453.070 required the results of the investigation, by whomever made, to be embodied in a written report to be submitted to the court.

As noted, it is abundantly clear that the document styled "application for child" was executed so the investigation required by § 453.070, RSMo 1949, could be made and quite possibly in the belief that an order of transfer was necessary. It is quite clear that the Juvenile Division of the Circuit Court of Jasper County was obliged to examine this document before entering a decree of adoption. Such an examination would have, and presumably did, indicate that the petitioners had been married 2½ years. Mr. Kelley's report also indicated that the petitioners were the plaintiff's natural mother and stepfather. Under the ruling of this court in *In re Adoption of Siler*, 240 Mo.App. 1097, 225 S.W.2d 379 (1949), it would have appeared—from a document the court was required to examine—that defendants Rodgers had had lawful and actual custody of the plaintiff for at least 9 months. It follows that the decree cannot be considered intrinsically void.

The plaintiff also suggests that the decree is a nullity because it does not specifically recite that she had been in her adoptive parents' actual and lawful custody for at least 9 months. In support of this argument, counsel cites *State v. Schilb*, 285 S.W. 748, 750[5] (Mo.App.1926), where the court held the decree should recite the statutory requisites for adoption. *Schilb* was decided before § 453.080 was enacted, and in candor we do not read that precedent as holding a recital of the conditions enumerated in former § 9613, RSMo 1939, to be jurisdictional. The court merely held the decree was "deficient" for failure to recite the jurisdictional facts. In any event, we are unwilling at this point to hold the decree void because the trial court did not explicitly find and recite satisfaction of the 9-month custodial period in the judgment. We are not concerned with the form of the judgment; as we have explained, we are concerned with the *power* of the trial court to enter the decree when it did. On the record, the court had that power.

It is further suggested that the decree should have been set aside because it was procured by fraud. In light of the precedents we consider controlling, we are in doubt that "fraud in the procurement" or "fraud in the concoction" is a ground upon which a judgment may be collaterally attacked. *Howey v. Howey*, supra, 240 S.W. at 457. In any event, no fraud was proved here. Defendants Rodgers were made parties but they were not called as witnesses; they did not even identify themselves as signatories to the "application for child" and indeed we have no idea how the investigating officer designated by the court acquired the knowledge, or impression, whichever it is, that Mr. and Mrs. Rodgers had been married 2½ years. The point is without merit.

To tidy up, without belaboring the point, the record in the adoption case shows the Juvenile Division of the Circuit Court had the power to enter the particular judgment (adoption) in that particular case (the adoption proceeding). We find no error except in the explicit declaration of heirship. Pursuant to Rule 84.14, the findings of heirship are stricken; heirship shall be determined by the Probate Court, which is bound by the finding that the adoption is valid. It is ordered that the judgment, as modified, be in all respects affirmed and that a copy of the mandate of this court be transmitted to the Probate Division of the Circuit Court of Jasper County as well as to the court in which the cause was tried.

BILLINGS, P. J., and PREWITT, Alternate Judge, concur.

MAUS, J., being disqualified, took no part in the consideration or determination of this case.