88 N.J. Super. 30 (1965)
210 A.2d 440
IN THE MATTER OF THE ADOPTION OF O.
Superior Court of New Jersey, Essex County Court, Probate Division.
Decided May 24, 1965.
*31 Mr. John A. Matthews, Jr. for petitioner Catholic Children's Aid Association.
Mr. Maurice M. Krivit for the wife (Messrs. Krivit & Krivit, attorneys; Mr. Spencer N. Miller on the brief).
Mr. Frank Palmieri for the husband.
CAMARATA, J.C.C.
This matter arises on a petition filed December 10, 1964 by the Catholic Children's Aid Association of New Jersey, hereinafter referred to as the agency.
The agency alleges fraud by the adopting parents and seeks to vacate the judgment of adoption entered by this court on August 19, 1964 and a return of the minor child (now 27 months old) to the agency.
In view of the nature of the allegations in the petition it is not set forth in full; it is incorporated by reference; it is a part of the adoption proceedings.
Defendant adopting mother, hereinafter referred to as W, filed an answer to the petition denying the allegations and lack of jurisdiction by the court to hear or determine the petition.
The agency contends that it is an arm of the court, and that a fraud committed by the adopting parents on the agency would be a fraud on this court.
*32 Research fails to show a case in New Jersey exactly on point where an adoption decree has been vacated; nor is there a provision in the adoption statutes permitting the application now before the court. While the point was raised in one case in New Jersey, it was not necessary for the court to decide it. The court there indicated that where an adoption is brought about by fraud or misrepresentation, the court has inherent power to control its own judgments. In re L's Adoption, 56 N.J. Super. 46 (Cty. Ct. 1959). R.R. 4:62-2 does not limit the power of a court to set aside a judgment or proceeding for a fraud upon the court.
The rationale of In re L's Adoption, supra, was followed in In re Doe's Adoption, 197 A.2d 469, 474 (Del. Orph. Ct. 1964), and in In re Emery, 191 Cal. App.2d 428, 12 Cal. Rptr. 685 (D. Ct. App. 1961).
The N.J. adoption laws, N.J.S.A. 9:3-17 et seq., effective January 1, 1954, provide for a recommendation to be made by an agency to the court as to whether or not an adoption should be approved. N.J.S.A. 9:3-23, subd. A(4)(b), 9:3-24, subd. C, 9:3-26, 9:3-27. In granting judgments of adoption our courts rely on the recommendations of an agency. I conclude:
(a) An approved agency is an arm of the court.
(b) Any fraud perpetrated on an agency is a fraud on the court.
(c) The court has jurisdiction to hear the instant matter.
On or about November 19, 1964 the adopting father, hereinafter referred to as H, filed a petition in this court and cause seeking the revocation of the final judgment of the adoption entered August 19, 1964, alleging fraud by W. Motion thereon was returnable November 24, 1964. The charges against the wife in H's petition, if true, are scandalous and charge moral turpitude. These charges are not set forth at length; they are part of the adoption proceedings and are incorporated herein by reference.
*33 On the return day of H's motion it was ascertained that on October 27, 1964 W had filed a suit for separate maintenance against H in the Superior Court, Chancery Division, Hudson County. No reference is purposely made to the names of the parties or the docket number in that action. No action was taken by this court on H's petition pending a determination in the separate maintenance action. W's basis for her cause of action was as set forth in paragraph 2 of her complaint; it charges eight acts of extreme cruelty, the first specific date being in the month of May 1963  the last September 29, 1964. From the complaint it appears that H and W cohabitated with each other until on or about September 29, 1964. On December 7, 1964 W amended her separate maintenance action to one for divorce on the grounds of extreme cruelty, identical with those acts alleged in her separate maintenance suit. H in his answer to W's amended complaint admitted that he and W cohabitated as therein alleged. The judgment nisi was in favor of W and granted her custody of the adopted minor child.
This court took testimony on the agency's petition on April 28, 1965, the witnesses being two of its case workers assigned to H and W and the supervisor of the agency. No proof was offered by the agency as to any of the allegations set forth in H's petition (seeking to set aside the judgment of adoption), nor was there any proof that W was and is an unfit person to have the child or that the child is not properly being taken care of. H did not testify, although he and his attorney were present.
The agreement to place the child for adoption was signed by H and W on May 7, 1963. It did not require H and W to make known to the agency any changes in their situation.
The case workers were at all times satisfied that H and W were fit persons to adopt the child. They made several visits to H and W's home and recommended the adoption to the court. Their written recommendation is confidential and is not set forth. Several days before August 19, 1964, the date of the adoption hearing, one of the workers telephoned and *34 spoke with W, who asked H for certain information  indicating that H was there. Both H and W testified on August 19, 1964 in connection with the proposed adoption. The adoption was approved.
I have examined the agency's case record. It confirms the conclusion of the case workers that H and W were fit persons to adopt the child.
The agency's supervisor was questioned by the court as to what the agency's policy would have been in the event it had notice that there was any difficulty between H and W. In her opinion the agency would not necessarily have revoked the adoption; it would have interviewed H and W to decide if there was any way the agency could assist them in their marital difficulties. That is one of the functions of the agency.
W was the only witness who testified in her own behalf. A college graduate, she told a straightforward story, admitted that prior to the final adoption on August 19, 1964 there were differences between her and her husband; they became reconciled; she felt that what went on between them was not unusual and so there was no need to notify the agency; she and her husband attended Mass regularly; she had every reason to believe that whatever differences there were at the time of the adoption had been reconciled. This is borne out by her complaint for separate maintenance which states that they cohabitated until September 29, 1964.
Were W not well intended, she could shirk her responsibilities as a mother by merely acceding to the agency's request and surrendering the child. Her tenaciousness in wanting to keep the child weighs heavily in her favor. I believe her; I was very impressed with her truthfulness, her demeanor, the way she conducted herself on the stand. I am satisfied that she is genuinely interested in being a good mother to the child. H, too, could have taken the stand and relieved himself of the financial and other responsibilities a parent is clothed with and assumes. This he did not do. No proof having been offered by the agency or H as to the allegations set forth in H's petition, this, coupled with the failure of H to *35 testify, his withdrawal of his answer to W's amended complaint for divorce, and the entry of the judgment nisi and final decree of divorce, leads me to the conclusion that the allegations in H's petition were unfounded and that on August 19, 1964, date of the adoption, all was well between H and W.
The divorce proceedings at first concerned me, because the allegations of extreme cruelty occurred during the period when H and W had the child and were seeking to adopt it. W explains the separate maintenance suit by stating that she filed it in the hope that H and she would adjust their differences, but when H persisted in his unfounded and unproven accusations of infidelity, she concluded it was of no avail and changed her suit to one for divorce. It is to be noted the amendment to the separate maintenance action was filed December 4, 1964, some three months after the adoption was granted.
Research does not disclose a case in New Jersey similar to the facts here presented. There are two cases out of jurisdiction  they are distinguishable. In In re Doe's Adoption, supra, the agency was not told of any marital difficulties in the home. In the agreement with the adoption agency the adoptive parents agreed to keep the agency advised of any significant changes in the family situation. The child sought to be adopted was ten days old. The court concluded that the adopting parents should have disclosed their marital differences, and so revoked the adoption in the best interest of the child, indicating that if the child were older the court might have concluded otherwise.
In In re Emery, supra, the wife sued for divorce four days after the adoption was recommended. The agency moved to vacate the judgment for adoption, claiming that the parents had willfully concealed from the agency the suit brought by the wife before the adoption petition was signed, and had misrepresented to the agency that the marriage was stable and harmonious. The court found sufficient evidence to set aside the adoption.
*36 In any marriage a natural-born child, in addition to the benefits and advantages it receives, is also faced with the hazard of changes in the parents' marital relationship and finances, including a termination of the marriage, whether by death or divorce. This is equally applicable to an adopted child.
Public policy dictates that there be very unusual facts and circumstances which would compel a court to set aside or revoke a judgment for adoption. I conclude that:
(a) H and W were actually living together as husband and wife at the time of the judgment for adoption.
(b) Whatever difficulties there were between H and W were reconciled and adjusted on August 19, 1964.
(c) H and W were not legally obligated by the agreement with the agency, or otherwise, to make known to it any marital difficulties.
(d) The agency, with knowledge of any difficulty, would not have revoked the adoption proceedings.
(e) The judgment of adoption entered will not be revoked, for to do so would be against the best interest of the child.
(f) The minor child will not be returned to the agency.
(g) The agency is not without remedy in the event the child is not properly maintained by W or H. It may proceed as provided in the statutes, either in the Superior Court, Chancery Division, or the Juvenile and Domestic Relations Court.
Counsel for petitioner will submit an appropriate order, consented to as to form by the respective attorneys of the husband and wife.