141 N.J. Super. 586 (1976)
359 A.2d 513
IN THE MATTER OF THE ADOPTION OF CHILDREN BY O.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided May 14, 1976.
*587 Mr. Ralph J. Pocaro for plaintiff.
Mr. John Anthony Lombardi for defendant.
Mr. George Warren, guardian ad litem for the infant children (Mr. Barry Baime appearing).
GRIFFIN, J.S.C.
This is an action to set aside a judgment of adoption of three minor children. There is no reported case in New Jersey in which such an action has been successful.
Both the adopting father (F) and the natural mother (M) seek this relief. The guardian ad litem for the children resists.
The following facts were either stipulated or were substantially undisputed. The natural father died in 1971 leaving three minor children. F and M were married in March of 1972. There was trouble in the marriage almost from the start. M felt that adoption by F would "knit our family *588 together and help save the marriage". In January 1973 the adoption action was started. In August 1973 M left with the children but returned in about one week. On September 14, 1973 a judgment of adoption was entered. From that day on, F and M did not cohabit as man and wife. Two or three weeks later she decided to leave and admittedly abandoned F, taking the children with her. On July 9, 1975 F secured a divorce on the grounds of desertion.
The oldest child was five at the time of the adoption. They are all now in school. They have always used the name of their deceased father and M resumed this name following her divorce.
With one minor exception, F has not seen the children since 1973. M testified that the children do not know him and it would "blow their minds" if they thought F was their father.
Shortly after the adoption hearing, but after M had left, F received the certificates from the surrogate and the adoption data forms (see N.J.S.A. 9:3-31) to be signed and forwarded so the birth records could be changed. He communicated with his wife. Both F and M, independently, called the attorney who handled the adoption and requested it be stopped. He assured each, on several occasions, that it would be. Each lived his life accordingly. The attorney took no action.
M testified that F would never be a father to the children. He has remarried. She receives $650 a month from Social Security for the children because of the death of their father. She is employed and earns from $100 to $140 a week, depending on her hours. Her inheritance from her deceased husband is now worth about $125,000, including a mortgage free home. She wants no financial help from F.
The action of this court will make no difference in the living conditions of the children. They will stay with M. F will stay with his new wife and not see them.
*589 This action is analogous to a motion to set a judgment aside. Procedurally, it might have been so handled. The court has no difficulty with the fact that the judgment of adoption is over one year old (see R. 4:50-2) or with its power to control, vacate or correct its own judgments. Wilford v. Sigmund Eisner Co., 13 N.J. Super. 27, 33 (App. Div. 1951); In re T, 95 N.J. Super. 228, 235 (App. Div. 1967)).
The first paragraph of N.J.S.A. 9:3-17 states the public policy of the Adoption Act:
This act shall be administered so as to give effect to the public policy of this State to provide for the welfare of children requiring placement for adoption and so as to promote policies and procedures which are socially necessary and desirable for the protection of such children, their natural parents and their adopting parents.
It should be noted that the protection of the natural parents and the adopting parents should be considered along with that of the child. See In re Adoption of G, 89 N.J. Super. 276, 281 (Cty. Ct. 1965). The court will consider the protection of the parents, although it agrees with the cases holding that the welfare of the child is paramount. In re L, 56 N.J. Super. 46 (Cty. Ct. 1959); In re Adoption of D, 78 N.J. Super. 117 (Cty. Ct. 1963); In re Adoption of O, 88 N.J. Super. 30 (Cty. Ct. 1965); In re Adoption of G, supra.
In the case of In re L, supra, the adopting parents, the natural mother and the adolescent child all wished to revoke the adoption some six years after it was granted. The court refused to do so even though all parties requested it because it felt that it was not in the best interest of the child.
This court agrees with the statement in In re Adoption of O, 88 N.J. Super. 30, 36 (Cty. Ct. 1965); "Public policy dictates that there be very unusual facts and circumstances which would compel a court to set aside or revoke a judgment for adoption." Such "very unusual facts and circumstances" exist in this case.
*590 Vacating the judgment of adoption is clearly in the best interests of the natural parent and adopting parent. F and M wish to sever all ties with each other. M wants no support for, and F wants no contact with, the children.
It is also in the best interests of the children. They do not know F. They have never used his name, nor does their mother. It would be most unsettling to have them go through life with the name of a man who is not their natural father and who they do not know. It is in their best interest to continue to live as they have always lived  the children of their deceased father and of their mother.
The guardian ad litem admitted that the only advantage to the children in sustaining the adoption was a possible economic advantage. However, the children are unlikely to have an economic problem and, in the opinion of the court, the disadvantages to the children of the adoption far outweigh the nebulous and speculative disadvantage of possible future economic hardship.
The judgment of adoption is set aside.