168 N.J. Super. 582 (1979)
403 A.2d 959
EMILE DE SANTO, JR., INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF GRACE DeSANTO, PLAINTIFF-APPELLANT,
v.
NICHOLAS BABINO AND THE ESTATE OF DONNA BABINO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 22, 1979.
Decided June 8, 1979.
*584 Before Judges LYNCH, CRANE and HORN.
Messrs. Fierro and Fierro, attorneys for appellant (Mr. Daniel A. Fierro, Jr. on the brief).
Messrs. Harwood, Lloyd, Ryan, Coyle & Wulster, attorneys for respondent Nicholas Babino (Mr. John D. Allen, III on the brief).
Mr. Joseph Guez, attorney for respondent Estate of Donna Babino (Mr. Robert E. Quinn on the brief).
The opinion of the court was delivered by HORN, J.A.D.
On January 13, 1976 plaintiff's mother, Grace De Santo, was a passenger in a vehicle owned by plaintiff's brother-in-law, Nicholas Babino, and being driven by his sister, Donna, who was the wife of Nicholas Babino. Allegedly due to the negligence of Donna in the operation of the vehicle, an accident occurred. Both plaintiff's mother and his sister were killed. Plaintiff was not a witness to the accident.
Plaintiff, an adult, suffers from multiple sclerosis. It was learned that he had this condition in 1969. By 1972 it had produced such physical degeneration that he was unable to work. He lived with his mother until she died and was "emotionally and financially" dependent upon her. Plaintiff claims that when he was informed of his mother's death he suffered such an immediate and catastrophic deterioration in his physical condition as to render him incapable of walking without the aid of a walker and made it impossible for him to leave his apartment.
Plaintiff instituted an action individually and as executor of his mother's estate by which he sought damages from Nicholas Babino and the estate of his late sister for his *585 pecuniary injuries under the Wrongful Death Act, N.J.S.A. 2A:31-1 et seq., and for the pain and suffering, and medical and hospital expenses of his mother, Grace De Santo.
Added to the claim for pecuniary loss under the Wrongful Death Act and the claim for the pain and suffering and expenses of his mother was the following claim as stated in the fifth count of the complaint:
That due to the negligence of both Defendants, the Plaintiff, who is a victim of multiple sclerosis and is unable to ambulate, has had his physical condition further disintegrate due to the death of his mother, Grace De Santo, on whom he depended for care, companionship and support.
WHEREFORE, Plaintiff demands judgment against the Defendant, NICHOLAS BABINO and the estate of DONNA BABINO on this Count plus costs of suit.
Plaintiff thereby sought to recover directly (as distinguished from the indirect recovery as next of kin under the Wrongful Death Act) for the impact upon him individually of the deprivation of his mother, i.e., loss of her "care, companionship and support," and the further deterioration of his physical condition allegedly resulting from the tragic incident.
Since this alleged cause of action appeared to defendants not only to be novel but also to be untenable, they challenged it by moving for a summary judgment. R. 4:46-1 et seq. After hearing argument on the motion the trial judge granted summary judgment on the basis of his conclusion that the asserted claim "was not a recognizable item of damages for a damage claim." Plaintiff then filed a notice of appeal, which brought the matter to us for review.
Preliminarily, defendants interpose the objection that this appeal is interlocutory and plaintiff did not secure leave to file same. R. 2:2-4; R. 2:5-6(a). Although the contrary may be argued, since the subject claim is completely foreign to the remaining claims, we need not decide the point since we have decided in this unusual and unfortunate case to accept the appeal.
*586 None of the parties filed affidavits with respect to the motion. However, defendants do not appear to dispute plaintiff's assertions, at least for the purposes of this motion, as to plaintiff's physical condition and his dependency upon his mother, or that his physical condition exacerbated since he learned of his mother's death.
At the outset it must be recognized that under the Wrongful Death Act, even though he is an adult, plaintiff may recover damages for his pecuniary losses resulting from the death of his mother, upon proof that he was a dependent. Turon v. J. & L. Constr. Co., 8 N.J. 543, 559 (1952). As already noted, he alleges that he depended upon his mother for "care, companionship and support." If by "companionship" plaintiff means to include mental anguish, it has long been settled that there may be no recovery under the Wrongful Death Act for such a claim. Burd v. Vercruyssen, 142 N.J. Super. 344, 355 (App. Div. 1976), certif. den. 72 N.J. 459 (1976). In any event, the damages sought by the fifth count overlap to some extent the damages which plaintiff may recover as next of kin under the Wrongful Death Act. Nonetheless, the fact that the claims for damages may overlap does not preclude plaintiff's right to recover if otherwise legally permissible.[1]
We have concluded, however, that the trial judge correctly held that our law does not authorize the maintenance of the asserted claim. Plaintiff urges that our law permits recovery by him under the circumstances which he alleges. The central theme of his argument is that "defendants"[2] were aware of his existing physical condition and his dependency upon his mother before the accident occurred. They therefore knew or should have known of the reasonably probable consequences of the death of his mother as they might affect *587 him personally. Thus, he says, "[T]he injuries suffered by plaintiff were reasonably foreseeable to the defendants who had actual notice of plaintiff's idiosyncratic weakness and dependence upon his mother." Further, and on the foregoing premise, his injuries (aggravation of his physical condition) were proximately caused by the defendants' action. Thus, in addition to the primary injuries allegedly sustained by plaintiff as a consequence of his mother's death, he seeks to recover damages for his further physical deterioration which he argues flowed from the mental impact upon him of his mother's death due to defendants' negligence.
For legal support plaintiff relies substantially on Falzone v. Busch, 45 N.J. 559 (1965). In that case the court overruled earlier cases holding to the contrary and declared that:
* * * [W]here negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright. [at 569]
We see no factual resemblance between that case and the instant one. For one thing, we doubt that "fright" is even present in the case at bar, although emotions of concern, uncertainty and mental anguish may flow to plaintiff from the loss of his mother. But Falzone did not extend the rule enunciated there as broadly as plaintiff interprets. In Falzone plaintiff's emotional stress arose from the negligent conduct of defendant in veering across the highway and heading in the direction of the car in which plaintiff was seated, "so close to plaintiff as to put her in fear for her safety." Falzone, at 561. Thus, in Falzone plaintiff's physical injury was claimed to have been induced by fear for her own safety, directly caused by her frightening experience. Nor do the facts of the case at bar come within any of the recognized *588 exceptions to the general rule as to the recovery for emotional stress.[3]
As decided in Caputzal v. The Lindsay Co., 48 N.J. 69 (1966), recovery for tort is not to be assessed solely on whether or not a consequence is reasonably foreseeable. Even though a reasonable person should recognize an act as involving an unreasonable risk of harm to another, the matter is one of determination by the court and not by the fact finder. Caputzal, supra at 75. And as reiterated in that same case in quoting from the opinion of the late Chief Justice Weintraub in Goldberg v. Housing Auth., 38 N.J. 578, 583 (1962):
"The question whether a private party must provide protection for another is not solved merely by recourse to `foreseeability.' Everyone can foresee the commission of crime virtually anywhere and at any time.

* * * * * * * *
The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."
We are of the view that the extension of the rule stated in Falzone, as argued for by plaintiff, would result in such extraordinary expansion of the concept of tort recovery that it is opposed to our policy
"[a]s a practical matter [of limiting] legal responsibility * * * to those causes which are so clearly connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy." [Prosser, *589 Torts (3 ed. 1964), § 41 at 240-241, quoted with approval in Caputzal, supra, 48 N.J. at 78]
We think that what was said in Burd v. Vercruyssen, supra, is in large measure applicable to the instant case:
It is clear that a deceased's parents have no right to sue for mental anguish under the wrongful death act. Russell v. Salem Transportation Co., Inc., 61 N.J. 502, 508 (1972); McStay v. Przychocki, 7 N.J. 456, 460 (1951). Plaintiffs, however, also assert an individual common law cause of action in their own right for the mental anguish. The damage claims of the parents in this case result from the emotional and mental distress incurred from their son's death and the viewing of his mangled body lying in the street. The Supreme Court, in Falzone v. Busch [supra] held the "no impact" rule no longer the law of New Jersey. Although Falzone broadened the scope of the rule, it did set limits to "no impact" claims. The court held that impact is not a prerequisite for recovery where fright causes substantial bodily injury or sickness; however, it conditioned the right to recovery to "fright from a reasonable fear of immediate personal injury * * *." (At 569). Mrs. Burd's mental shock did not result from fear of personal injury to herself but rather was due to her son's untimely death and the circumstances of his identification. See also Caputzal v. The Lindsay Co. [supra]. Falzone and Caputzal represent the outer limits of the "no impact" rule and as such excludes plaintiffs' claims, which were properly dismissed by the entry of summary judgment. [142 N.J. Super. at 355-356]
For the foregoing reasons, the summary judgment entered in the trial court is affirmed.
NOTES
[1] This is a matter which can be resolved by appropriate trial procedures.
[2] That is to say: Nicholas Babino and Donna Babino.
[3] Falzone at 564-565-(1) injuries sustained in attempting to avoid a hazard negligently created by another; (2) physical injuries caused by fright, if accompanied by impact "however inconsequential or slight," and (3) physical suffering resulting from a willfully caused emotional disturbance.