677 A.2d 1163

JULIE GANGEMI, EXECUTRIX OF THE ESTATE OF RITA M. BLASKO, DECEASED, AND JULIE GANGEMI, INDIVIDUALLY, PLAINTIFF–APPELLANT, v. NATIONAL HEALTH LABORATORIES, INC., DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, AND KENNETH GARRETT, M.D., THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 29, 1996—Decided June 28, 1996.

Before Judges DREIER, ARNOLD M. STEIN and CUFF.

*Frank A. Campana* argued the cause for appellant (*De Yoe, Heissenbuttel & Mattia,* attorneys; *Philip F. Mattia* and *Mr. Campana,* on the brief).

*Brian J. Levine* argued the cause for respondent (*Edell & Associates,* attorneys; *Mr. Levine* on the brief).

The Opinion of the court was delivered by

DREIER, P.J.A.D.

Plaintiff, Julie Gangemi appeals by leave granted from the dismissal of the count of her complaint alleging her right to damages under *N.J.S.A.* 2A:31–1 to –6 for the wrongful death of her sister, Rita Blasko, who was her sole sibling. Ms. Blasko died on March 11, 1992 of cervical cancer after her Pap smear test had been misdiagnosed as negative by defendant National Health Laboratories. The error was not discovered for one and a half years, after which time treatment was fruitless. Ms. Blasko had never married, and plaintiff was the surviving next-of-kin.

Plaintiff was thirty-five years old when her sister died at the age of forty-one. The two sisters had always been very close and plaintiff considered her sister to be her "confidant/advisor." The family had moved often when they were children, and plaintiff had no close childhood friends aside from her sister. Their mother had died in 1981. Plaintiff states that she particularly relied on her sister for counsel regarding her turbulent relationship with her husband, whom she had married when she was eighteen and divorced in 1981. After the divorce, plaintiff regularly sought her sister's advice in coping with the difficult "on-again/off-again" relationship she maintained with her husband. They visited each other weekly during the fifteen years plaintiff and her sister both resided in New Jersey, and every other week when plaintiff moved to Pennsylvania in 1988. They spoke on the telephone several times a week.

Plaintiff also relied on her sister for guidance regarding her career. Her sister had worked at a hospital for nineteen years

until her death. After plaintiff's divorce, and after working for many years as a waitress, plaintiff also entered the health field as a lab technician. She found her sister's advice "invaluable" during this time.

In its motion for partial summary judgment, defendant had argued that plaintiff was not entitled to bring a claim under New Jersey's Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6, because there was no evidence that she had suffered any pecuniary damages as a result of her sister's death. At the July 28, 1995 and August 11, 1995 arguments, however, the judge questioned why no one had discussed whether a sister would be entitled to maintain a wrongful death action. Defendant's counsel explained that plaintiff was the decedent's next-of-kin, and he had assumed that she was the beneficiary under the statute. The judge then referred to a case before the Appellate Division concerning the standing of a fiancé.[1] Defendant noted the interrelationship between the Wrongful Death Act and the intestacy statute, and conceded that a sister could recover under the Wrongful Death Act if she could show damages. The judge, however, stated:

> [N]either of you really approached it from the way that I was concerned about ... It's possible the Appellate Division or the Supreme Court might in fact decide that such an item of damage should be available to a sister, to a boyfriend or girlfriend, to a cousin, to a neighbor who has done the same acts; that may be. But at present, based on the fact that Green versus Bittner in their language—and the Supreme Court predicates it on the parent/child relationship—I think as a trial level judge I'm not at liberty to extend this to someone outside that scope, namely a sister.

The court appeared to be applying to this case the standing principles associated with a claim for negligent infliction of emotional distress, rather than the law governing a wrongful death plaintiff's ability to prove damages for the loss caused by the death. The judge eventually explained that, while she believed

---

[1] The judge may have been referring to *Dunphy v. Gregor*, 261 *N.J.Super.* 110, 114, 617 *A.2d* 1248 (App.Div.1992), *aff'd*, 136 *N.J.* 99, 642 *A.2d* 372 (1994), which discussed a cohabiting fiancé's standing to pursue a claim for negligent infliction of emotional distress, and did not address the issue of standing under the wrongful death statute.

plaintiff might have standing as a sibling, she understood *Green v. Bittner*, 85 *N.J.* 1, 424 *A.*2d 210 (1980), to require either dependency to support the pecuniary interest claim, or a parent/child relationship to sustain what she termed "the emotional claim." She therefore granted defendant's motion for summary judgment.

The trial court's concern regarding a sibling's ability to assert a claim under the statute was misplaced. Unlike the situation involving negligent infliction of emotional distress claims, standing in wrongful death actions is established, at least initially, by statute. The first sentence of *N.J.S.A.* 2A:31–4 reads:

> The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same.

Thus, the statute clearly anticipates recovery for any qualifying family member, but excludes cohabiting fiancés, friends, or neighbors who never could have standing under intestacy laws. Siblings such as plaintiff, who are entitled to take under the intestacy laws and who also can establish the elements of the wrongful death action, are entitled to recover.

Defendant contends that "to assert recovery under the New Jersey Wrongful Death Act, a plaintiff must show dependency and thus pecuniary loss." Defendant cites *N.J.S.A.* 2A:31–4 as support for its argument. The statute, however, contains no such words or requirement. The second sentence of the statute discusses dependency, but concerns itself solely with allocation of recovered proceeds:

> If any of the persons so entitled [under the intestacy statutes] were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled [in fair and equitable proportions].
>
> [*N.J.S.A.* 2A:31–4.]

Thus, where some intestate beneficiaries are also dependents, they take the proceeds to the exclusion of other intestate beneficiaries, and they take in proportions established by the court. *Wolff v. Mercer Medical Center*, 220 *N.J.Super.* 360, 364, 532 *A.*2d 265 (App.Div.1987); *Goodman v. Newark Beth Israel*, 251 *N.J.Super.* 533, 537–38, 598 *A.*2d 956 (Law Div.1991). Defendant attempts to

add a dependency criterion to the statute's first sentence and thereby restrict standing to those intestate beneficiaries who can prove dependency. However, financial dependency is not a statutory prerequisite to recovery under this section, but arises in defining the quantum of damages that are recoverable. *See Carey v. Lovett,* 132 *N.J.* 44, 67–68, 622 *A.*2d 1279 (1993) (parents can be considered "dependent" on a newborn baby, and can suffer economic losses of future care and companionship as a result of the baby's death).

Damages for wrongful death "are limited to economic matters." *Ibid.; see N.J.S.A.* 2A:31–5 (permitting recovery for "pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased"). "Economic matters" and "pecuniary injury" are, however, not limited to "the well-known elements of pecuniary loss such as the loss of ... help with household chores, or the loss of anticipated direct financial contributions" by the decedent. *Green v. Bittner, supra,* 85 *N.J.* at 4, 424 *A.*2d 210. The damages also encompass "[t]he loss of guidance, advice and counsel," and companionship. *Id.* at 14–15, 424 *A.*2d 210. The Court warned, however, that the evaluation of such benefits "in this context must be limited strictly to their pecuniary element." *Id.* at 12, 424 *A.*2d 210. The estimation may not include any consideration of emotional loss relating to either decedent's death or plaintiff's pleasure in having her next of kin, rather than a stranger, perform the activities. *Ibid.*

The type of advice and companionship compensable under the Act is the kind which may be purchased. *Ibid.* In the context of a parent/child relationship, the Court gave the example of hired companions who may provide assistance to aged parents with shopping, nursing care and household management. *Id.* at 12 n. 2, 424 *A.*2d 210. The recovered "value must be confined to what the marketplace would pay a stranger with similar qualifica-

tions for performing such services." *Id.* at 12, 424 *A.*2d 210.[2]

In the case before us, defendant argues that plaintiff has provided no evidence that her sister rendered the kind of advice, counsel or companionship which would have been provided by strangers, and therefore is merely attempting to recover for her emotional loss. While plaintiff's certification certainly reflects her emotional loss, it also provides ample factual evidence that her sister regularly rendered services for which plaintiff otherwise might have sought professional help. Many people coping with a divorce or turbulent marriage turn to psychologists, social workers and psychiatrists for precisely the kind of regularly dispensed advice and counsel provided by plaintiff's sister. Similarly, people attempting to change careers might seek specialized help from career counseling centers. Plaintiff's sister had the capacity to provide this help, and was especially qualified to do so, as she had worked for many years in the field that plaintiff eventually entered. In this regard, her role was not unlike the children, described in *Green v. Bittner,* who care for a parent, employing their acquired knowledge of that parent's likes and dislikes, strengths and weaknesses.

The trial court's belief that the holding in *Green v. Bittner* limited recovery for companionship losses solely to the parent/child relationship is incorrect. The Supreme Court refers specifically to the compensable assistance siblings might receive from the decedent, *Green v. Bittner,* 85 *N.J.* at 7, 424 *A.*2d 210, and also repeatedly cites with approval an earlier case holding that brothers and sisters had undoubtedly suffered a pecuniary loss upon the deaths of their older brothers. *Id.* at 5, 9, 11, 12, 15, 16, 17, 424 *A.*2d 210 (citing *McStay v. Przychocki,* 9 *N.J.Super.* 365, 74 *A.*2d 370 (Law Div.), *aff'd,* 10 *N.J.Super.* 455, 77 *A.*2d 276

---

[2] The Court also noted that, included among a decedent-child's qualifications are the child's familiarity with his or her parent's habits and preferences. *Green v. Bittner,* 85 *N.J.* at 12 n. 3, 424 *A.*2d 210. This element is equally applicable to siblings.

(App.Div.1950), *aff'd*, 7 *N.J.* 456, 81 *A.2d* 761 (1951)); *see also id.* at 8, 424 *A.2d* 210 (citing *Shutka v. Pennsylvania R.R. Co.*, 74 *N.J.Super.* 381, 181 *A.2d* 400 (App.Div.1962) (concerning sister's recovery for brother's death)). Finally, the Court explained that its decision to extend recovery for the loss of a child's companionship was based on its conclusion that there was

> no reason why the same factual approach used in adult death cases should not be taken when it is a child who has been killed. There is nothing in the statute to distinguish one case from the other: "pecuniary injuries" suffered by the surviving next of kin is the standard for *all* wrongful death cases.
>
> [*Green v. Bittner, supra*, 85 *N.J.* at 11, 424 *A.2d* 210.]

Plaintiff in this case is the undisputed "surviving next of kin" and she should be entitled to present her proofs of compensable damages to a jury.

The order from which plaintiff appeals is reversed, and the matter is remanded for further proceedings.