734 A.2d 304

IN THE MATTER OF THE ADOPTION OF BABY T.

Argued March 15, 1999—Decided August 4, 1999.

· *David M. Fried* argued the cause for appellants P. and J.H. (*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte,* attorneys).

*Louis John Dughi, Jr.* argued the cause for respondent Nishat Zedie, M.D. (*Dughi and Hewit,* attorneys; *Marie Judith McCormack* and *Gary L. Riveles,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The issue in this wrongful death-medical malpractice case is whether a doctor being sued for causing the death of an adopted infant has standing to challenge the posthumous finalization of the infant's adoption. The Chancery Division, Family Part, concluded that there is no standing. A divided panel of the Appellate Division held that under the factual matrix of this case there is standing. 311 *N.J.Super.* 408, 411, 709 *A.*2d 1381 (1998). This appeal is before us as of right based upon a dissent in the Appellate Division. *R.* 2:2–1(a)(2). We now reverse, holding that a defendant in a wrongful death-medical malpractice action lacks standing to collaterally attack the posthumous adoption of the victim of the alleged malpractice.

I

Baby T was born on December 1, 1993. Prior to the infant's birth, his natural mother selected P.H. and J.H., husband and wife, to be the adoptive parents of her unborn child. The natural mother executed a valid surrender of her parental rights to Adoptions From the Heart, a State-approved and licensed adoption agency. On December 4, 1993, P.H. and J.H., through the adoption agency, took physical custody of Baby T with the intent to adopt the child. The agency visited their home on three occasions after the child had been placed with the prospective adoptive parents and found they were providing a loving and caring home.

On March 31, 1994, the infant was admitted to Robert Wood Johnson University Hospital for same-day surgery to repair an inguinal hernia. During the administration of anesthesia by defendant Dr. Nishat Zedie, the baby became "rigid" and suffered cardiac arrest. Although initially stabilized and transferred to the pediatric intensive care unit, the infant deteriorated and died later that day. A medical consultant retained by the prospective adoptive parents informed them that Baby T died because Dr. Zedie administered succinylchlorine, an anesthetic expressly classified by the Food and Drug Administration as contraindicated for use in children.

P.H. and J.H., with the consent of the adoption agency, accepted responsibility for all funeral arrangements and expenses for Baby T. They made those arrangements as the parents of the child and buried him in their family plot under the name they had given the child. In other words, they treated the child as if he were their natural-born son.

At the time of Baby T's death on March 31, 1994, the prospective adoptive parents had not filed a complaint for adoption because the child had resided in their home for only four months rather than the six months required by N.J.S.A. 9:3–47a. Consequently, the adoption agency requested permission from the Bureau of Adoption Agency Licensing of the New Jersey Division of

Youth and Family Services ("Bureau") to consent to the finalization of Baby T's adoption. On November 4, 1994, the Bureau waived the six-month requirement of *N.J.S.A.* 9:3–47a. By that time, the statute had been amended to remove the six-month requirement for filing a complaint. *L.* 1993, *c.* 345, § 10, effective April 27, 1994. In granting permission to proceed with the adoption, the Bureau stated that "in consideration of the circumstances involved with this case and the family's desire to [finalize] the adoption, the Bureau of Licensing will not cite as a violation the agency's consent to the adoption of the child with four months of supervision." The adoption agency granted its consent to the adoption of Baby T by P.H. and J.H. on February 1, 1995.

The prospective adoptive parents apparently filed their complaint for adoption in early 1995. On July 7, 1995, the Family Part, with full knowledge of the death of Baby T, entered a final judgment of adoption of Baby T by P.H. and J.H. They adopted a second child at the same time.

The wrongful death, survivorship, and medical malpractice complaint was filed on March 8, 1995, by P.H., individually and as the administrator of Baby T's estate, against Dr. Zedie and several other defendants.

On July 17, 1997, more than two years after the adoption had been finalized, Dr. Zedie filed a motion in the Family Part to vacate the final judgment of adoption of Baby T pursuant to *Rule* 4:50–1(d). Dr. Zedie argued, based on that rule, that the judgment of adoption was void because it was not permitted by statute and that she had standing to vacate the adoption. The trial court in a published opinion denied the motion based upon the Adoption Act, *N.J.S.A.* 9:3–37 to –56, and the court's equitable and *parens patriae* powers. 308 *N.J.Super.* 344, 354, 705 *A.*2d 1279 (Ch.Div. 1997). The trial court also found the judgment of adoption was not void, a requirement for relief under *Rule* 4:50–1(d). *Id.* at 363, 705 *A.*2d 1279.

The trial court concluded that Dr. Zedie had no standing under *Rule* 4:50–1 because she was neither a party to the adoption, nor a

legal representative of a party to the adoption. *Id.* at 349, 705 A.2d 1279. It concluded that Dr. Zedie had not suffered any direct harm as a result of the adoption and sought to vacate the adoption only in an attempt to find sanctuary from the potential liability attendant to the wrongful death and survivorship actions commenced against her. *Ibid.*

Notwithstanding the trial court's finding that Dr. Zedie lacked standing, it nonetheless addressed the substantive issue concerning the validity of the posthumous adoption. *Ibid.* Relying on *In re Adoption of Children by O.,* 141 *N.J.Super.* 586, 589, 359 *A.*2d 513 (Ch.Div.1976), the trial court concluded that "[a]n adoption judgment should not be set aside unless it is in the best interests of the child, and the adoptive parents." *In re Adoption of Baby T., supra,* 308 *N.J.Super.* at 355, 705 *A.*2d 1279. The trial court further noted that a motion to vacate a final judgment of adoption should be granted only under the most unusual facts and circumstances. *Ibid.* The court analogized the facts in the present case with those in *Stellmah v. Hunterdon Cooperative G.L.F. Serv., Inc.,* 47 *N.J.* 163, 219 *A.*2d 616 (1966), in which this Court upheld the adoption of a child where the final judgment of adoption was entered subsequent to the death of the adopting parent in order to render the child eligible to receive worker's compensation benefits. *In re Adoption of Baby T., supra,* 308 *N.J.Super.* at 356, 705 *A.*2d 1279. The trial court reasoned that it "would be contrary to the spirit and intent of the Adoption Act" to vacate the adoption where "the completion of the six-month placement period was thwarted by the alleged malpractice of the very person who seeks to vacate the adoption." *Id.* at 357, 705 *A.*2d 1279. The court rejected Dr. Zedie's assertion that the doctrine of equitable adoption was not recognized in New Jersey. *Id.* at 358–59, 705 *A.*2d 1279 (citing *D'Accardi v. Chater,* 96 *F.*3d 97 (4th Cir.1996)). In addition, Dr. Zedie's reliance on *In re Adoption of Bradfield,* 97 *N.M.* 611, 642 *P.*2d 214 (1982), was found unpersuasive. The trial court viewed the New Mexico Court of Appeals' decision to uphold the vacation of a posthumous adoption as a rigid, unequitable and unenlightened adherence "to an immutable rule" requiring that all parties

to an adoption be alive at the time the final judgment is entered. *In re Adoption of Baby T., supra,* 308 *N.J.Super.* at 361–62, 705 *A.*2d 1279.

A divided panel of the Appellate Division reversed. *In re Adoption of Baby T., supra,* 311 *N.J.Super.* at 416, 709 *A.*2d 1381. The majority concluded that Dr. Zedie had standing to question the validity of the adoption judgment. *Id.* at 411, 709 *A.*2d 1381. Relying on *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission,* 82 *N.J.* 57, 68, 411 *A.*2d 168 (1980), the majority concluded that Dr. Zedie "[a]s a defendant in the malpractice action ... has a stake in the validity of the adoption judgment and her interest establishes a 'genuine adverseness' between her and the adoptive parents." *In re Adoption of Baby T., supra,* 311 *N.J.Super.* at 412, 709 *A.*2d 1381 (internal citations omitted).

The majority concluded that neither case law nor the doctrine of equitable adoption authorizes posthumous adoption in New Jersey. *Id.* at 413–14, 709 *A.*2d 1381. The panel stated that the trial court had "overread" the *Stellmah* decision, noting that the adoption approved in that case was valid only because the child had acquired the status of an adopted child under the laws of Quebec and not under the laws of New Jersey. *Id.* at 413, 709 *A.*2d 1381.

Alternatively, the Appellate Division held that the doctrine of equitable adoption was applicable only "to support a claim for benefits which would be available if a legally recognized parent-child relationship existed." *Id.* at 416, 709 *A.*2d 1381. The majority was of the view that "[w]hether the equitable adoption concept is applicable must be decided in the context of a specific claim," and as such "Baby T's administrator's contention that principles of equitable adoption apply to sustain the action for medical malpractice must be made to the Law Division in the context of that claim and the wrongful death statute." *Ibid.*

Judge Shebell dissented, disagreeing with both the majority's determination of standing as well as with its conclusion on the substantive issue of the adoption's validity. *Id.* at 416–20, 709

A.2d 1381 (Shebell, J., dissenting). Judge Shebell agreed with the trial court that Dr. Zedie did not have standing under *Rule* 4:50–1 because she had suffered no injury resulting from the adoption of Baby T. *Id.* at 417, 709 *A.*2d 1381 (Shebell, J., dissenting). Judge Shebell concluded that the adoption in this case was valid based on a proper application of the equitable powers of the trial court and based upon a thoughtful consideration of the best interests of the child and the prospective adoptive parents. *Id.* at 418–20, 709 *A.*2d 1381 (Shebell, J., dissenting).

## II

The prospective adoptive parents argue that Dr. Zedie lacks standing to move to vacate the judgment of adoption because she was neither a party nor a party's legal representative to the original adoption proceeding as required by *Rule* 4:50–1. They further contend that the judgment of adoption created no substantial likelihood that Dr. Zedie would be harmed by it. On the merits, the prospective adoptive parents maintain that the judgment of adoption was a proper exercise of the Family Part's equitable powers.

Dr. Zedie maintains that the prospective adoptive parents' counsel conceded below that she had standing to challenge the adoption. Alternatively, Dr. Zedie contends that her status as a target of the medical malpractice action creates the requisite adverseness sufficient to confer standing to challenge the adoption. On the merits, she argues that neither the Adoption Act nor the doctrine of equitable adoption permits prospective parents to finalize an adoption after a prospective adoptee's death.

## III

The threshold issue is whether Dr. Zedie has standing to collaterally attack the final judgment of adoption by seeking to vacate it. The rule relied on by Dr. Zedie provides that the trial court "may relieve a party or the party's legal representative from a final judgment [if] the judgment ... is void." *R.* 4:50–1(d).

Standing "refers to the plaintiff's ability or entitlement to maintain an action before the court." *New Jersey Citizen Action v. Riviera Motel Corp.,* 296 *N.J.Super.* 402, 409, 686 *A.*2d 1265 (App.Div.), *certif. granted,* 152 *N.J.* 13, 702 *A.*2d 352 (1997), *and appeal dismissed as moot,* 152 *N.J.* 361, 704 *A.*2d 1297 (1998). Entitlement to sue requires a sufficient stake and real adverseness with respect to the subject matter of the litigation. *Crescent Park Tenants Ass'n v. Realty Equities Corp.,* 58 *N.J.* 98, 107, 275 *A.*2d 433 (1971). A substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for the purposes of standing. *Home Builders League of South Jersey, Inc. v. Berlin Tp.,* 81 *N.J.* 127, 134–135, 405 *A.*2d 381 (1979); *So. Burlington Cty. NAACP v. Mt. Laurel Tp.,* 67 *N.J.* 151, 159, n. 3, 336 *A.*2d 713 (1975), *App. dism.,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975). *New Jersey State Chamber of Commerce, supra,* 82 *N.J.* at 67, 411 *A.*2d 168. A lack of standing by a plaintiff precludes a court from entertaining any of the substantive issues presented for determination. *Watkins v. Resorts Int'l Hotel and Casino,* 124 *N.J.* 398, 424, 591 *A.*2d 592 (1991); *Crescent Park, supra,* 58 *N.J.* at 107, 275 *A.*2d 433.

In terms of adoptions, the Adoption Act, the Rules of Court, and case law provide an aid in determining which individuals have standing to challenge an adoption action. *N.J.S.A.* 9:3–45 requires that notice of the adoption complaint and hearings must be given to the natural parents of the prospective adoptive child, absent surrender or termination of parental rights. In addition, under *N.J.S.A.* 9:3–46a and b, any parent or guardian who has not executed a surrender of rights as well as any individual who has provided primary care and supervision for the child for at least six months or one half of the life of the child, whichever is less, has standing to object to the adoption and must be given notice. *See also R.K. v. A.J.B.,* 284 *N.J.Super.* 687, 692, 666 *A.*2d 215 (Ch.Div. 1995) (holding that "[i]t would seem to follow [from *N.J.S.A.* 9:3–46b] that one who is *not* entitled to notice of the proceedings is one who is *not* provided, by the Legislature, with the right to object").

In addition to *Rule* 4:50–1(d), one of our Rules of Court that is designed to effectuate the Adoption Act provides that "the court ... may direct that notice of the [adoption] proceeding shall be given to any persons whose interests may be prejudiced or affected by the entry of a judgment of adoption." *R.* 5:10–5(b). Finally, judicial decisions concerning standing to vacate or reopen a judgment of adoption have accorded standing only to those individuals who were a party to the original adoption judgment. *In re T.*, 95 *N.J.Super.* 228, 235, 230 *A.*2d 526 (App.Div.1967). That decision was based on then *Rule* 4:62–2, the source rule for *Rule* 4:50–1. Both rules limit the movant to parties and legal representatives of the parties.

Our review of the record in light of the foregoing principles fails to reveal any persuasive basis upon which standing may be conferred upon Dr. Zedie to collaterally attack the judgment of adoption. The fact that counsel for the adoptive parents may have conceded that Dr. Zedie has standing to challenge whether plaintiffs are next-of-kin is legally insufficient to permit a successful collateral attack upon the judgment of adoption. First, standing is an element of justiciability that cannot be waived or conferred by consent. *New Jersey Citizen Action, supra,* 296 *N.J.Super.* at 411, 686 *A.*2d 1265. Second, Dr. Zedie seeks to vacate the judgment of adoption so that her challenge regarding the next-of-kin issue will have a better chance of success. *Rule* 4:50–1(f), under which she sought that result, does not permit a collateral attack on the judgment because Dr. Zedie was neither a party nor a legal representative of a party to the final judgment of adoption. Furthermore, Dr. Zedie is not in the class of individuals entitled to notice under the Adoption Act, or *Rule* 5:10–5(b), or the class of people who have been granted standing to object under either the Adoption Act or the Rules of Court.

Dr. Zedie relies heavily on her assertion that she is entitled to standing due to the adverseness created between herself and the prospective adoptive parents resulting from the medical malpractice, wrongful death, and survivorship claim. We reject that

contention. Dr. Zedie is a total stranger to, and indeed an intermeddler in, the adoption proceedings. Simply because the legal relationship formed by the judgment of adoption now provides the foundation for the personal injury causes of action against her cannot alter that determination. We agree with Judge Shebell that, "Dr. Zedie suffers no direct harm as a result of the adoption judgment; she still has the opportunity to present a complete defense to all of the wrongful death claims brought in the malpractice action." *In re Baby T., supra,* 311 *N.J.Super.* at 417–18, 709 *A.*2d 1381 (Shebell, J., dissenting). It is the malpractice action that creates adverseness for Dr. Zedie, not the adoption judgment. The judgment of adoption affects only those who may be entitled to the proceeds of successful wrongful death and survivorship causes of action and not the merits of the alleged medical malpractice. *See N.J.S.A.* 2A:31–4; *N.J.S.A.* 2A:15–3.

We agree with Justice Handler that this opinion should not be interpreted generally to deny standing to the defendants in wrongful death and survivorship cases to challenge the plaintiffs' status as next-of-kin. *Infra,* at 343–44, 734 *A.*2d at 310–11 (Handler, J., concurring). We hold only that Dr. Zedie lacks standing in this collateral proceeding to seek to vacate the judgment of adoption that was entered by a court of competent jurisdiction. The impact of that holding is that although Dr. Zedie can challenge the next-of-kin issue in the pending litigation, the trial court may take judicial notice of the judgment of adoption. *N.J.R.E.* 201. The judgment will have the same probative effect as a marriage or birth certificate.

## IV

Because we find that Dr. Zedie lacks standing to collaterally attack the judgment of adoption, we decline to address the issues related to posthumous adoptions and the applicability of equitable adoptions by prospective adoptive parents.

Although Justice Handler makes a persuasive argument that Dr. Zedie should be equitably estopped from collaterally challeng-

ing the legal effect of the judgment of adoption, *infra,* at 347–49 734 *A.*2d at 312–13 (Handler, J., concurring), that issue is so interwoven with the issue of equitable adoptions that we decline to use it as an additional basis for refusing to vacate the judgment of adoption.

We invite the Legislature to consider whether equitable and posthumous adoptions should be permitted and under what conditions. The Adoption Act is a creation of the Legislature that provides rights and obligations that were not available at common law. For example, the Legislature may wish to adopt an amendment to the Adoption Act that is similar to the Utah Adoption Code that provides for the entry of a final judgment of adoption if a child dies prior to the expiration of the statutory residency periods. *Utah Code Ann.* § 78–30–14(7). Such a provision in our Adoption Act would provide flexibility in cases such as the present one.

The judgment of the Appellate Division is reversed, and the judgment of adoption is reinstated.

HANDLER, J., concurring.

In this case, the defendant, an anesthesiologist, is being sued for malpractice in the death of an infant under the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6. The suit was brought by plaintiffs who claim to be the infant's next-of-kin by virtue of a judgment of adoption obtained after the infant's death. The Court holds that defendant lacks standing to challenge the posthumous judgment of adoption. I agree with the disposition of this case, but write to emphasize that the majority opinion should not be interpreted to deny defendants in wrongful death suits the standing to challenge plaintiffs' status as next-of-kin. An analysis permitting defendant the right to challenge plaintiffs' status as next-of-kin, however, would not in the circumstances of this case lead to the conclusion that this defendant may collaterally attack the judgment of adoption at issue here.

The Wrongful Death Act contains two provisions regarding potential plaintiffs. The first provides that either an *administrator ad prosequendum* of the decedent or an executor, if the decedent dies testate, is entitled to sue for the wrongful death of the decedent. *N.J.S.A.* 2A:31–2. The second provides that only those persons "entitled to take any intestate personal property of the decedent" may recover damages as a result of wrongful death proceedings. *N.J.S.A.* 2A:31–4. That portion of the statute incorporates the law of intestate succession by implication. Under that body of law, the heirs of the decedent are entitled to take his or her personal property. *N.J.S.A.* 3B:5–2. Judgments of adoption create such an entitlement. *N.J.S.A.* 2A:22–3; *N.J.S.A.* 3B:5–9.

Because the threshold focus in a case such as this must be on the Wrongful Death Act and whether plaintiffs are next-of-kin under that Act, it is necessary to distinguish between a defendant's standing by way of defense to challenge a plaintiff's entitlement to bring suit and a defendant's right to collaterally attack a final judgment. Standing is frequently expressed in terms of the plaintiff's interests. Standing generally refers to the plaintiff's entitlement to bring and maintain a suit, which rests on the party's stake in the outcome of the litigation and an adversarial interest against opposing parties sufficient to assure an adversary proceeding. *New Jersey Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 67, 411 *A.*2d 168 (1980). The principles of standing similarly define the capacity of a defendant to raise and maintain defenses. *Williams v. Bell Tel. Lab.,* 132 *N.J.* 109, 119, 623 *A.*2d 234 (1993). The court may not consider the merits of a case where the litigant lacks standing. *Watkins v. Resorts Int'l Hotel & Casino,* 124 *N.J.* 398, 424, 591 *A.*2d 592 (1991).

In this case, it is the putative status of plaintiffs as the heirs or next-of-kin of the deceased infant that entitles them to sue defendant for pecuniary loss attributable to the death of their child. It is beyond question that this defendant, being sued for malpractice under the Wrongful Death Act, has the requisite interest in the

outcome of this case and the necessary adverseness against plaintiffs to challenge their status as next-of-kin. The fact that Dr. Zedie would not have had standing to interfere in the adoption proceeding because at the time she was a stranger to the proceeding cannot bar her from challenging the parents' right to bring suit against her.

It is well settled that a defendant may challenge the basis for a plaintiff's claim to the status of next-of-kin and entitlement to recover under the Wrongful Death Act. *See, e.g., Gangemi v. National Health Lab.,* 291 *N.J.Super.* 569, 677 *A.*2d 1163 (App. Div.1996) (recognizing defendant's right to defend against sister's wrongful death claim that she was next-of-kin and could recover pecuniary loss from decedent's death); *Sykes v. Propane Power Corp.,* 224 *N.J.Super.* 686, 541 *A.*2d 271 (App.Div.1988) (ruling that unmarried cohabitant of decedent could not recover damages under Wrongful Death Act); *cf. De Santo v. Babino,* 168 *N.J.Super.* 582, 403 *A.*2d 959 (App.Div.1979) (ruling that grown son could not recover as dependent, but could recover as next-of-kin under Wrongful Death Act).

There are numerous examples in related contexts that confirm the right of defendants to challenge plaintiffs' claims that they are either dependents or next-of-kin when that is a material element of their cause of action. New Jersey courts, especially in the intestacy context, recognize challenges to next-of-kin determinations. *See, e.g., In re Estate of Rozet,* 207 *N.J.Super.* 321, 504 *A.*2d 145 (Law Div.1985) (allowing father who abandoned his child to inherit his share of child's intestate estate); *Commercial Trust Co. of N.J. v. Adelung,* 136 *N.J.Eq.* 37, 45, 40 *A.*2d 214 (Ch.1944) (recognizing minor child adopted several years after execution of trust indenture as "next-of-kin" allowing defendant to challenge adoption of adult son wishing to inherit through intestate succession because New Jersey law at that time did not permit adult adoption), *aff'd,* 137 *N.J. Eq.* 541, 45 *A.*2d 841 (Err. & App.1946); *Hendershot v. Hendershot,* 135 *N.J.Eq.* 232, 238, 37 *A.*2d 770 (Ch.1944) (allowing defendant to challenge oral agreement to

adopt, which was never executed, after adoptive parent's death in order to provide child with inheritance, and enforcing that agreement). Analogously, in the workers compensation context, New Jersey courts allow defendant employers to challenge the petitioner's right to compensation, where there is some question as to whether petitioner is a dependent of the decedent or where petitioner's legal status is otherwise in question. *Stellmah v. Hunterdon Coop. G.L.F. Serv., Inc.,* 47 *N.J.* 163, 219 *A.*2d 616 (1966) (allowing employer to contest standing of adoptive child, and deciding on merits that employer must pay workers' compensation to child as dependent); *see Parkinson v. J. & S. Tool,* 64 *N.J.* 159, 313 *A.*2d 609 (1974) (permitting employer's challenge to spouse's right to bring workers' compensation claim, and holding that *de facto* spouse is entitled to dependency benefits under workers' compensation statute).

The Court identifies the basic issue as "whether Dr. Zedie has standing to move to vacate the final judgment of adoption." *Ante* at 348, 734 *A.*2d at 313. It concludes that Dr. Zedie, not being a natural parent, guardian, or care-provider of the child, would not have been entitled to notice of the adoption complaint and hearings and would not have had "the right to object" to the adoption. *Ibid.* (quoting *R.K. v. A.J.B.,* 284 *N.J.Super.* 687, 692, 666 *A.*2d 215 (Ch.Div.1995)). The question to be addressed, however, is whether plaintiffs are Baby T's next-of-kin under the Wrongful Death Act. That issues poses potentially difficult questions of statutory interpretation of the Wrongful Death Act. *See, e.g., Negron v. Llarena,* 156 *N.J.* 296, 716 *A.*2d 1158 (1998) (construing period of limitations under Wrongful Death Act in light of common law and statutory sources to include doctrine of substantial compliance); *Giardina v. Bennett,* 111 *N.J.* 412, 545 *A.*2d 139 (1988) (determining in light of common law and statutory sources that term "person" under Wrongful Death Act was not intended to include still-born child). In this case, however, all parties apparently agreed that the posthumous judgment of adoption would be determinative of plaintiffs' status as next-of-kin, and for that reason

define the issue in the case as whether defendant has standing to challenge that judgment.

If one considers defendant's defense as posing a challenge to the adoption judgment, it may be considered a collateral attack. Collateral attacks on previously entered judgments are generally disfavored in the law, primarily due to the notion of repose. The decision of a court to grant or deny a petition for relief "will be left undisturbed unless it results from a clear abuse of discretion." Pressler, *Current N.J. Court Rules,* comment on *R.* 4:50–1 (1999). Although a judgment may be challenged because it is void, *R.* 4:50–1(d), the revocation of a final judgment of adoption generally requires "very unusual facts and circumstances." *In re Adoption of O.,* 88 *N.J.Super.* 30, 36, 210 *A.*2d 440 (Cty.Ct.1965). A "catch-all" provision also permits a judgment to be vacated for "any other reason justifying relief from the operation of the judgment or order." *R.* 4:50–1(f). This portion of the rule is intended to provide relief to litigants in exceptional situations. *Court Invest. Co. v. Perillo,* 48 *N.J.* 334, 341, 225 *A.*2d 352 (1966). This case, however, does not require the application of these rules.

It is the legal effect of the challenged adoption judgment that apparently will determine whether defendant can succeed in disputing plaintiffs' status as next-of-kin. Principles of equitable estoppel, not standing, should be invoked and applied in determining whether, in these circumstances, the defendant should be entitled to set aside a judgment or neutralize its legal effect. The factors that are implicated by the doctrine of equitable estoppel include the relationship of the parties, the surrounding circumstances giving rise to the litigation, and the nature of the claims and defenses as between the parties. *See, e.g., Heuer v. Heuer,* 152 *N.J.* 226, 232–235, 704 *A.*2d 913 (1998) (declining to set aside an eleven-year-old marriage based on invalidity of ancient divorce under equitable doctrine of estoppel); *Kazin v. Kazin,* 81 *N.J.* 85, 98, 405 *A.*2d 360 (1979); *cf. Newburgh v. Arrigo,* 88 *N.J.* 529, 538–41, 443 *A.*2d 1031 (1982) (applying presumptive validity of last of

two or more marriages, but declining to find wife-in-fact to be "heir").

The application of the doctrine of equitable estoppel is appropriate in this case. We may assume the relationship between the parties was that of doctor-patient; the plaintiffs functioned as parents of the child; they were the persons exercising parental authority regarding the infant's well being. When the doctor undertook treatment of the child, she looked to and relied on plaintiffs as the infant's parents to provide informed consent, to authorize medical treatment, and to be responsible for payment for her professional services. We may further assume defendant considered herself to be fully responsible and accountable to plaintiffs for the medical treatment to be rendered, and for the ensuing results. Also, that defendant voluntarily undertook to perform those professional services based on the strength of the parental relationship and authority. In the malpractice action itself those facts would be germane. The judgment of adoption was in no way relevant in the congeries of facts giving rise to the relationship among the parties and their respective rights and duties. It was only after the critical events transpired, and not until after the commencement of this malpractice suit, that the doctor began to question the validity of the plaintiffs' status as parents. Because defendant had not contested plaintiffs' parental role before, it would be unfair to plaintiffs to allow defendant to challenge their parental role now. Further, as noted by the majority and Judge Shebell in his dissent below, Dr. Zedie will not be prejudiced if she is precluded from challenging the legal effect of the judgment of adoption because she still has the opportunity to confront the merits and present a complete defense in the malpractice action. 311 *N.J.Super.* 408, 417–18, 709 *A.*2d 1381 (1998).

The application of equitable estoppel calls for a close and focused analysis of the interests of the parties and the circumstances giving rise to the claims and defenses, a weighing of the equities. It is the analysis that should be followed in determining

whether such a reposed judgment, otherwise remote from the current action, should be set aside and its legal effect negated. No equitable reasons present themselves that would require a court to reopen the judgment of adoption. As the Court pointed out in *Heuer, supra,* "[p]rinciples of equity must be applied in light of the totality of the circumstances." 152 *N.J.* at 235, 704 *A.*2d 913. I would find that principles of equity as applied to the facts in this case estop defendant from collaterally challenging the legal effect of the posthumous judgment of adoption of Baby T. That defendant is estopped from bringing such a challenge does not result in an injustice to her, and avoids an outcome that would be unfair to plaintiffs.

Therefore, I agree with the Court's reversal of the Appellate Division's judgment.

O'HERN, J., concurring.

I concur in the judgment not because Dr. Zedie lacks standing to challenge the adoption of Baby T., but because the posthumous adoption properly recognized the substantive rights of the parties.

As Judge Shebell noted in his dissent below, it is inescapable that we cannot foreclose Dr. Zedie from defending herself in the wrongful death action, both by contesting the allegations of negligence and by challenging the nature of the relationship between Baby T. and his adoptive parents. Judge Shebell reasoned that any issues remaining after the adoption judgment would "be considered by a jury in the wrongful death action by taking into account ' ... whether there was such a well founded expectation of pecuniary benefit to the decedent's next-of-kin to be derived from a continuance of the life of the decedent as could be estimated in money ...' " *In re Adoption of Baby T.,* 311 *N.J.Super.* 408, 418, 709 *A.*2d 1381 (1998) (Shebell, J., dissenting) (quoting *Capone v. Norton,* 21 *N.J.Super.* 6, 9–10, 90 *A.*2d 508 (App.Div.1952)). I believe that we should consider the merits now and determine whether Dr. Zedie may attack the validity of the adoption judgment in the context of the wrongful death action.

The situation in which P.H. and J.H. found themselves is akin to the "black hole" described in *Carr v. Carr*, 120 *N.J.* 336, 340, 576 *A.*2d 872 (1990). Because Baby T. died before the then-six-month statutory waiting period had passed, his adoptive parents faced the possibility that the State was the only party able to obtain compensation through a wrongful death action against Dr. Zedie.

Under the circumstances, these adoptive parents did not need a certified copy of the adoption judgment to have suffered emotional harm. A bystander may recover for emotional distress even if the bystander's relationship to the injured person is not by marriage or by blood. *See Dunphy v. Gregor*, 136 *N.J.* 99, 115, 642 *A.*2d 372 (1994) (holding that familial relationship between unmarried cohabitants will support emotional distress claim, so long as relationship was "stable, enduring, substantial, and mutually supportive"). Similarly, although P.H. and J.H. cannot claim emotional distress here, an adoption need not be final for adoptive parents to develop a stable, enduring and substantial relationship with their adoptive child such that fair and just compensation may be awarded under the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to – 6.

In granting the adoption, the Family Part simply did what the Legislature would undoubtedly intend that it do in the circumstances—achieve "essential and fundamental justice." *In re Adoption of a Child by H.C.*, 284 *N.J.Super.* 202, 207, 664 *A.*2d 515 (Ch.Div.1994) (quoting *Crane v. Bielski*, 15 *N.J.* 342, 349, 104 *A.*2d 651 (1954)).

> Based on these equitable principles, and the facts and circumstances uniquely presented by this case, the chancery judge's equitable adoption holding was properly made in the adoption proceeding and should stand. Baby T "should not be allowed to be placed in some sort of legal limbo. Equity should not and cannot permit such a bizarre result in this case."
>
> [*Baby T., supra*, 311 *N.J.Super.* at 420, 709 *A.*2d 1381 (Shebell, J., dissenting) (quoting *In re Adoption of Baby T.*, 308 *N.J.Super.* 344, 364, 705 *A.*2d 1279 (Ch.Div.1997)).]

Justices HANDLER and O'HERN, concur in result.

*For reversal & reinstatement*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.