132 A.3d 449

V.H. AND C.H., PLAINTIFFS, v. NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Cape May County

Decided October 23, 2015.

*Linda L. Campbell* for plaintiffs (*Kearney, Campbell & Burns, PC,* attorneys).

*Tara K. Catanese*, Deputy Attorney General, for defendants (*John Jay Hoffman*, Acting Attorney General, attorney).

RAUH, J.S.C.

This adoption matter presents the novel question of whether a final judgment of adoption may be vacated based upon the alleged fraud of the New Jersey Division of Child Protection and Permanency ("NJDCPP") in placing the child with the plaintiffs. Plaintiffs also argue the best interests of the other persons in the home and the child adopted warrant vacating the adoption. For the reasons set forth below the court concludes that under the circumstances of this case the adoption should not be disturbed. This opinion will recount a brief procedural and factual history followed by an analysis of the applicable statutes, court rules and case law. Finally, the court will explain the reasons for its conclusion.

The present application was filed on August 7, 2015. The NJDCPP filed a brief in opposition on August 24, 2015. The plaintiffs filed a reply on or about August 26, 2015. The court heard oral arguments and delivered a decision from the bench on October 23, 2015. This written opinion formalizes and supplements that oral opinion.

The complaint for adoption was filed on November 12, 2008. The judgment of adoption was entered on December 12, 2008. It is that judgment which the plaintiffs seek to vacate. The child who is the subject of the adoption was born on May 18, 2004.

The following factual recitation is taken solely from the certifications filed by the plaintiffs. According to the plaintiffs, the NJDCPP falsely represented that it had no knowledge of the birth mother's mental health issues or drug abuse, and also falsely represented that the identity of the father was unknown. Because of those misrepresentations, plaintiffs seek to have the judgment vacated. Plaintiffs also urge the court to vacate the adoption because the child has become violent and sexually abusive, thereby endangering the plaintiffs and other persons in the home.

Plaintiff indicate that about a year after the adoption, they sought out the child's biological family. The child's biological maternal grandmother disclosed that the child's mother had had mental health issues since a young age. She was reportedly diagnosed as having bipolar schizoaffective, and defiant mood disorder. She also had problems with drug and alcohol abuse from early adolescence. Also, the adoptive family learned the identity and whereabouts of the biological father. It is alleged all of these details were either known to the Division or easily discoverable. However, the Division failed to reveal this information to the adoptors.

The child was placed with the plaintiffs on April 25, 2007. The plaintiffs welcomed the child into their home and loved and cared for the child. Post adoption the child developed troubling behaviors. These included physically violent behaviors. The child became assaultive of other students in the classroom. He then became assaultive and abusive in the home. In February of 2015, the child pushed another student's head into concrete and threw things at him. The child was admitted to a residential facility because of homicidal thoughts toward his classmates. On March 14, 2015, the child sexually assaulted his brother. The child's troubling and violent behaviors continued and on May 16, 2015, he attempted to kill his father with a meat knife. The child remains in a juvenile facility pending juvenile charges.

As set forth above, plaintiffs' argument is twofold. The first rationale is that because the NJDCPP did not fully and adequately disclose the child's family history that the adoption should be vacated. The second rationale is that based upon the totality of the circumstances, including the welfare of the other persons in the home and the welfare of the adopted child, that the court should in the interests of justice vacate the adoption. For the reasons set forth below, both of these arguments fail. However, prior to explaining the court's decision, a brief outline of the adoption process will be presented.

■ Adoptions are a statutorily created judicial mechanism creating a legal parent and child relationship where none existed before. *See In re Adoption of P.*, 193 *N.J.Super.* 33, 36, 471 *A.2d* 1220 (Law.Div.1983). Adoptions fall into four general categories: adult adoptions authorized by *N.J.S.A.* 2A:22–1, agency adoptions under *N.J.S.A.* 9:2–18, private adoptions under *N.J.S.A.* 9:3–46, or as in this case, an adoption after parental rights of the biological parents have been terminated in a NJDCPP proceeding pursuant to *N.J.S.A.* 30:4C–15.

In this case the biological parents' rights have been terminated pursuant to *N.J.S.A.* 30:4C–15. Upon that termination, the child was legally free for adoption. *N.J.S.A.* 30:4C–20. Thereafter the adoption proceeding was filed resulting in the entry of the judgment of adoption which is now challenged.

The entry of the final judgment of adoption, created the "same relationships, rights, and responsibilities between the child and adopting parent as if the child were born to the adopting parent in lawful wedlock." *N.J.S.A.* 9:3–50(b). The judgment of adoption also extinguished any remaining parental rights or obligations in the birth parents. *N.J.S.A.* 9:3–50(c).

However, the judgment of adoption like any judgment may be vacated pursuant to *Rule* 4:50–1. *See In re Adoption of a Child of Indian Heritage*, 111 *N.J.* 155, 184, 543 *A.2d* 925 (1988). As noted above, plaintiffs urge two general grounds for vacating the present judgment of adoption. The first is a lack of disclosure on the part of the Division with regard to the child's family history. The second is the totality of the circumstances, including the best interests of all involved.

■ With regard to the first argument, it would appear that the plaintiffs rely upon either *Rule* 4:50–1(a) (mistake) or (c) (fraud). However, *Rule* 4:50–2 requires that all applications under (a), (b), or (c) of *Rule* 4:50–1 be made within a reasonable time and no more than one year after the judgment. The judgment challenged in this particular instance is almost seven years old. Accordingly,

according to the terms of the *Rule* itself the challenge fails as untimely.

Also, to the extent that information may have been withheld intentionally or unintentionally, it is clear according to plaintiffs' own certifications that much if not all of the information allegedly withheld became apparent within the first year of the adoption judgment. The plaintiffs' own certifications indicate that they reached out to the biological family shortly after the judgment was entered. They were alerted with regard to the mental health as well as substance abuse issues of the mother. They were also alerted with regard to the putative father's identity and whereabouts. Accordingly, even assuming any withholding of material information, the plaintiffs kept silent for another six long years after they learned of same. They cannot be heard now to complain about information supposedly withheld that was made known to them some six years ago.

Alternatively, plaintiffs argue that the adopted child's welfare as well as the welfare of other persons in the home require that the court set aside the judgment of adoption. *Rule* 4:50–1(e) allows the court to set aside a judgment where it is no longer equitable. *Rule* 4:50–1(f) allows the court to set aside a judgment "for any other reason justifying relief from the judgment." However neither provision warrants vacating this seven-year-old adoption.

Initially it should be pointed out that while the well-being of third parties may be considered, it is the welfare of the child being discussed that is paramount. *In re Adoption of Children by O.,* 141 *N.J.Super.* 586, 589, 359 *A.*2d 513 (Ch.Div.1976). In determining whether to vacate an adoption, the courts have required "very unusual circumstances." *Id.* at 590, 359 *A.*2d 513. In *In re Adoption of Children by O.,* the court vacated the adoption where the adoptive children did not know the adoptive parent, the biological parent wished to have no contact with the adoptive parent, and the adoption had been entered without the knowledge of any of the parties. *Ibid.* In *In re Adoption of M.,* 317

*N.J.Super.* 531, 547, 722 *A.*2d 615 (Ch.Div.1998), the court determined in light of the very unusual circumstances there (the adoptive father had impregnated the adoptive daughter and the father and daughter wished to marry) that the judgment of adoption would be vacated. This case, while terribly sad, does not involve "unusual circumstances" but rather the uncertainty of becoming a parent either through the biological or adoptive process.

Although not directly on point, the analysis set forth in *F.B. v. A.L.G.*, 176 *N.J.* 201, 821 *A.*2d 1157 (2003) is applicable to the present matter. In that case, the movant sought to set aside a paternity judgment three years after the judgment. *Id.* at 203, 821 *A.*2d 1157. The judgment was entered five years after the child was born. *Id.* at 203–04, 821 *A.*2d 1157. The movant and the child's mother had an intimate relationship that predated the birth of the child in 1990 for approximately six months. *Id.* at 204, 821 *A.*2d 1157. The movant and the child's mother never married or lived together. However the relationship continued for years. *Ibid.* In 1994, when the mother sought public assistance, the local board of social services sought an order against the movant for support. *Ibid.* The movant did not request a paternity test at that point; instead, he affirmatively acknowledged paternity and a judgment of paternity and support was entered. *Ibid.* The mother gave birth to a second child in 1996. *Id.* at 205, 821 *A.*2d 1157. The movant acted as a father to both children. *Ibid.*

The relationship between the movant and the children's mother terminated in 1998. *Ibid.* Shortly thereafter, the movant applied to have the 1995 judgment of paternity vacated. *Ibid.* The movant learned from the mother's sister that he was not the biological father of the child. *Ibid.*

The court conducted an analysis of *Rule* 4:50–1. *Id.* at 207, 821 *A.*2d 1157. It noted that relief is to be granted only sparingly. *Ibid.* The court observed the application need not set forth the relied upon subsection, however, (a), (b), and (c) require an application to be made within one year. *Id.* at 208, 821 *A.*2d 1157

(citing *Rule* 4:50–2). The court explained that subsection (e) requires a showing of extreme and unexpected hardship. *Ibid.* The court pointed out subsection (f) requires a showing of "exceptional circumstances." *Ibid.*

In light of the fact that the movant had acknowledged paternity and acted as a father to the child, the court determined that the judgment would not be disturbed. *Id.* at 212, 821 *A.*2d 1157. The court also observed that nothing had changed since the entry of the judgment other than the relationship between the movant and mother had ended. *Ibid.*

In the present matter plaintiffs welcomed the child into their home in April of 2007. They loved him and cared for him. In December of 2008, they affirmatively sought and were granted parental status. They have, even to the present time, acted as the child's parents, much to their credit. In this case, the circumstances are very tragic. The child adopted has proven to be a danger to his family as well as the community at large. However, those circumstances are not as a result of the adoption but rather the unpredictability of becoming a parent. Had the child been born to the adoptive parents there would be no telling how the child would turn out. That uncertainty is no different because the child in this case was adopted. The statute and the case law all indicate that the adoption judgment created the legal relationship of parent and child between the adopters and the child. The present circumstances, although frightening and tragic, do not allow the court to simply overlook the past seven years where the plaintiffs have been the child's mother and father. The application is denied.